631 A.2d 1049

Barbara PIKUNSE

v.

Steven KOPCHINSKI and Michael Kopchinski, Appellants.

Superior Court of Pennsylvania.

Submitted Aug. 16, 1993.

Filed Sept. 30, 1993.

Lawrence J. Roberts, Elkins Park, for appellants.

Dennis J. Gesker, Philadelphia, for appellee.

Before ROWLEY, President Judge, and TAMILIA and POPOVICH, JJ.

48

ROWLEY, President Judge.

Following a bench trial in the instant landlord-tenant dispute, Steven and Michael Kopchinski (hereinafter "appellants"), appeal from a judgment entered against them, and in favor of Barbara Pikunse, (hereinafter "appellee"). The two (2) issues which have been presented for our review are: (1) whether appellee met her burden of proof at trial regarding the value of her personal property which was converted by appellants; and (2) whether the trial court's award of punitive damages is adequately supported by the evidence. Having carefully reviewed the record in light of the law relevant to these issues, we affirm.

In November of 1989, appellants leased an apartment, located at 11703 Telfair Road, Philadelphia, Pennsylvania, to appellee for one year. The subject premises were actually owned by Michael Kopchinski and managed by his brother, Steven. Appellee paid timely rent in November and December of 1989, but in January, she was only able to pay partial rent to appellants because she was laid off from her employment as a waitress. Appellee told appellants that she would pay them the balance of her rent after she secured other employment. Appellants consented to this arrangement. Thereafter, appellants never received a rental payment, either full or partial, from appellee.

On March 11, 1990, appellants changed the locks on the apartment at 11703 Telfair Road and left appellee a note stating that she "must come up with half of [the] money [she owed them] in order to get back in." Appellee testified at trial that when she discovered that her key would not fit into the lock of her apartment door, "it was late at night. [She] had to wait until the next day. Then [she] called the Kopchinskis." (R.R. p. 15a). During that phone conversation, appellee was told by Michael that "he could do whatever the hell he want[ed] to, [because] it's his building, he owns it." (R.R. p. 16a). Whereupon, appellee "climbed in the window and changed the lock on the door." (R.R. p. 17a). "Within the next few days, [appellants] re-entered the apartment and replaced the lock [appellee had installed] with the lock which

was on the apartment door when [appellee had] moved in. They left a note stating 'Barbara—call us concerning this. We cannot get in touch with you. Don't change locks.'" (Trial Court Opinion, 1/29/92, p. 2).

Thereafter, on April 9, 1990, when appellee returned home, her apartment was completely empty and all of her personal possessions were gone. Appellants admit that they took appellee's belongings from the apartment, and further that after placing them in storage for a short time, they deposited them at the side of the road as trash.

In this case, as stated by the trial court, "[b]oth parties agree on the facts stated above." (Trial Court Opinion, 1/29/92, p. 3). However:

"[at trial,] [appellants] [averred] that there existed other circumstances which led them to reasonably conclude that [appellee] had abandoned the premises and her property. [Appellants] presented testimony that [appellee] did not respond, orally, by telephone, or in writing, to any of five notes that they left for her. They also claim[ed] to have visited the apartment once or twice each week from mid-January to April 9, but that [appellee] was never on the premises. [Appellants] claim[ed] that at the time of the lock changes and the apartment clearing, [appellee] still maintained a fully erected Christmas tree and that the sink was full of dirty dishes and rotting food. [Appellants] argue[d] that these facts demonstrate that their actions were reasonable or, at the very least, [were] not outrageous.

[Appellee], on the other hand, contend[ed] at trial] that she maintained a fairly steady dialogue with [appellants], keeping them apprised of her unsound financial condition and inability to pay rent. She claim[ed] never to have given any indication of intending to abandon the apartment or her possessions. [Appellee] argue[d] that [appellants'] conduct was outrageous and that she should, therefore, receive punitive damages as well as compensatory damages.

Finally, [both at trial and here on appeal,] the parties dispute the nature and value of [appellee's] possessions.

[Appellee] proffer[ed] a long list of household goods and personal effects, along with suggested values thereof [to assist the trial court in fixing damages]. In addition, she claims to have lost a variety of older items which held great emotional or sentimental value to her.

[Appellants] claim that [appellee's] property amounted to a few boxes of junk which they set out on the curb for trash pick up. However, [the trial] Court f[ound] [appellee's] contentions to be the more credible ones."

(Trial Court Opinion, 1/29/92, p. 2–3).

Following the trial court's credibility determination, it awarded appellee compensatory damages in the amount of $7,139.00, and punitive damages in the amount of $7,500.00. Thereafter, appellant filed a motion for judgment notwithstanding the verdict, which the trial court then denied. This timely appeal ensued.

Initially, we note that our standard in reviewing this case is, as follows:

"In reviewing the denial of a motion for judgment N.O.V., the evidence together with all reasonable inferences therefrom must be viewed in a light most favorable to the verdict winner; all conflicts in the evidence are resolved in favor of the prevailing party. *See Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 398 A.2d 1378 (1979); *Mike v. Borough of Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251 (1980). Evidence supporting the verdict is considered and the rest rejected. *Glass v. Freeman*, 430 Pa. 21, 240 A.2d 825 (1968). As we said recently, '[a] judgment notwithstanding the verdict should be entered only in a clear case, when the facts are such that no two reasonable persons could fail to agree that the verdict was improper....' *Martin v. Soblotney*, 296 Pa.Super. 145, 442 A.2d 700 (1982)."

*Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 379–380, 492 A.2d 1382, 1385 (1985).

The first issue which we must address concerns the trial court's valuation of the items taken from appellee. Appellants contend on appeal that the trial court's award of

compensatory damages in the amount of $7,139.00 was improper because no expert testimony as to the *fair market value* of the items taken was presented. Appellants insist that because "there [wa]s absolutely no testimony from any one as to a price which a purchaser would be willing to pay for an item and no testimony with regard to a price for a particular item which a seller would be willing to sell [1]," appellee did not carry her burden of proving damages by a preponderance of the evidence. We do not agree.

While, ideally, the "measure of damages for conversion is the market value of the converted property at the time and place of conversion," *Bank of Landisburg v. Burruss*, 362 Pa.Super. 317, 328, 524 A.2d 896, 899 (1987), *alloc. denied*, 516 Pa. 625, 532 A.2d 436 (1987), such a value is, in fact, often unascertainable. In *Landisburg*, the subject property, cattle, was sold at auction where the fair market value thereof could be ascertained merely by looking at the price for which the cattle were sold. In the instant case, however, appellee's household goods were thrown out by appellant tortfeasors, such that the fair market value of those goods could not be determined.

It is well-settled that "mere uncertainty as to the amount of damages will not bar recovery where it is clear that damages were the *certain result of the defendant's conduct*. [citation omitted]." *Pugh v. Holmes*, 486 Pa. 272, 297, 405 A.2d 897, 909–910 (1979) (emphasis added). In the instant case, it is obvious that appellee's damages were the "certain result" of appellants' conduct. Appellants irrevocably disposed of appellee's clothes, furniture, and appliances, as well as treasured photographs, books, and religious items. We will *not* preclude recovery merely because the damages awarded to appellee for

1. Recently, in *F & M Schaeffer Brewing v. Lehigh County*, 530 Pa. 451, 610 A.2d 1 (1992), our Supreme Court reiterated the definition of fair market value as "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Id.* at 457, 610 A.2d at 3, *quoting Buhl Foundation v. Board of Property Assessment*, 407 Pa. 567, 570, 180 A.2d 900, 902 (1962).

her loss were *estimated* by the trial court. Indeed, it is the traditional function of the fact finder in conversion actions to estimate damages. *Penn Electric Supply Co., Inc. v. Billows Electric Supply Co., Inc.*, 364 Pa.Super. 544, 550, 528 A.2d 643, 646 (1987).

In *Penn Electric*, this Court considered, and then rejected, the plaintiff's contention that the trial court was *required* to accept the plaintiff's valuation of damages because the defendant failed to identify and value the goods he converted. In so doing, we stated:

"We have not uncovered another jurisdiction that, in conversion actions, places the burden of proof as to damages on the defendant so as to require the court to accept the plaintiff's figure. [citations omitted]. The cases hold that plaintiff is not relieved of the burden of proving the amount of damages simply because the defendant 'by his own wrong has precluded a more precise computation of damages.' [citations omitted]. *The general rule is that if the defendant wishes to argue for a reduction in damages or to rebut the adequacy of plaintiff's evidence, the burden of such a showing is on the defendant.* But failure to meet this burden does not require the court to assess damages at whatever figure the plaintiff has shown, however uncertain. [citations omitted]."

*Id.* at 549–550, 528 A.2d at 645. It was therefore held that "in a conversion action, it is for the trier of fact to consider the evidence of damages from *both* the plaintiff *and* the defendant and to measure the value of the damages in the context of [the] plaintiff's burden." *Id.* at 550, 528 A.2d at 646.

Further, in *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243 (1983), this Court stated:

"Though justice and public policy require that the wrong-doer bear the risk of uncertainty which his own wrong has created and which prevents the precise computation of damages, the fact-finder still may not render a verdict based on speculation or guesswork. [citation omitted]. *Yet, the fact-finder may make a just and reasonable estimate of the*

*damage based on relevant data, and in such circumstances may act on probable and inferential, as well as upon direct and positive, proof.* [citation omitted]. Thus, the law does not demand that the *estimation* of damages be completely free of all elements of speculation. [citation omitted].

\* \* \* \* \* \*

Although the law does not command mathematical precision from evidence in finding damages, sufficient facts must be introduced so that the court can arrive at an intelligent *estimate* without conjecture. [citation omitted]. Where the amount of damage can be fairly *estimated* from the evidence, recovery will be sustained even though such amount cannot be determined with entire accuracy. [citation omitted]. It is only required that the proof afford a reasonable basis from which the fact-finder can calculate the plaintiff's loss. [citation omitted]."

*Delahanty* at 118–119, 464 A.2d at 1257–1258.

In the instant case, the trial court considered the evidence presented by both appellee and appellants and found that appellee's evidence was the more credible. In light of this factual finding, we conclude that the trial court's award of damages was not improper, but rather, was adequately supported by the evidence. The list of items taken, and their worth, as estimated by appellee, based on the price she paid for each, afforded the trial court a reasonable basis upon which to calculate appellee's loss. Appellants failed to meet *their* burden of proof with respect to rebutting appellee's valuation evidence, and therefore, the trial court was free to accept the figure of $7,139.00 proffered by appellee as the value of her personal possessions.

■ Next, appellants claim that trial court's award of $7,500.00 in punitive damages was an abuse of that court's discretion because the conduct of appellants, in disposing of every personal possession that appellee owned, cannot be considered "outrageous" because they "were young landlords who thought that they had a right to seize the personal

property of [appellee] in order to satisfy the obligations of a delinquent tenant." We cannot agree.

As noted in *Rizzo v. Haines*, 520 Pa. 484, 555 A.2d 58 (1989):

> "This Court has adopted Section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages. That provision permits punitive damages for conduct that is 'outrageous because of the defendant's evil motives or his *reckless indifference to the rights of others.'* Restatement (Second) of Torts § 908(2) (1977). *See Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984); *Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355 (1963). A court may award punitive damages only if the conduct was malicious, wanton, *reckless*, willful, or oppressive. *Chambers*, 411 Pa. at 344–45, 192 A.2d at 358. The proper focus is on 'the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties....' *Id.* at 345, 192 A.2d at 358."

*Rizzo* at 507, 555 A.2d at 69. (emphasis added).

While appellants contend that "at the very least, they thought that they were entitled to [appellee's] personal property under some color of right," we observe that appellants did not keep the property, or even attempt to sell it to "satisfy the obligations" of appellee. Rather, it is clear that, in retaliation for appellee's failure to pay rent, appellants deliberately threw away items, such as furniture and appliances, which were clearly needed by appellee for everyday living. We are of the mind that in this regard, appellants acted, at best, with reckless indifference to appellee's legal rights.

Perhaps even more significantly, however, appellants threw away items that, although devoid of any fair market value, were of tremendous sentimental value to their owner—photos, rosary beads, communion books, and cards which had been given to appellee by her mother or grandmother, now deceased. Appellants' actions in this respect were, in our opinion, wanton and malicious. We therefore conclude that the

trial court properly exercised its discretion in awarding appellee punitive damages.

Judgment affirmed.