# In re W.M.

C.P. of Lehigh County, No. CP-39-JV-560-2014

*Michael Edwards*, for Commonwealth.
*Andrea Olsovsky*, for juvenile.

STEINBERG, *J.*, May 11, 2015—On September 18, 2014, the juvenile, W.M., was adjudicated delinquent on charges of Criminal Mischief,[1] Furnishing Alcohol to Minors,[2] and Underage Drinking.[3] He was placed on probation and ordered to pay court costs and make restitution to Salisa Berrien in the sum of $5,000.00

Due to the lack of agreement concerning the restitution, hearings were held in an effort to determine the appropriate

---

1. 18 Pa.C.S. § 3304(a)(1).
2. 18 Pa.C.S. § 6310.1(1).
3. 18 Pa.C.S. § 6308(a).

amount of restitution. The Commonwealth is requesting restitution in the amount of $28,308.52. The juvenile believes that he should only be ordered to pay "a reasonable restitution amount, an amount supported by the evidence, and within the juvenile's ability to pay."[4] It is counsel's calculation that the amount of restitution ordered should be approximately $4,680.00. Both counsel have submitted memorandum of law addressing the restitution issues.

## Background

On July 11, 2014, the juvenile held a house party at the home of Salisa Berrien, which is located at 450 Daniel Street in Allentown. His decision to take over the home of Ms. Berrien, who is his aunt, was done without her permission. She was unaware that the juvenile intended to hold this party, and was not present during the debauchery. She first observed the havoc wreaked upon her home on July 16, 2015.

The juvenile, who may have advertised this party on Facebook, gained access to his aunt's home with a code to her garage door. More than twenty (20) people were present when the police responded to a neighbor's report of "flashlights" at Ms. Berrien's home, which was for sale. This number may not have been an accurate count on the attendees, because the same neighbor reported that upon the arrival of the police, people were running through his yard.

This party may not have reached the epic proportions that the movie "Project X" depicts, but it involved the same activities. Ms. Berrien testified throughout the

---

4. Juvenile's Memorandum of Law In Support of Juvenile's Position on Restitution (hereinafter W.M. Memorandum), p. 7.

juvenile proceedings to the damage and vandalism to her home. She identified damage to various furniture, and how various bedding, including comforters and sheets located in different bedrooms, were soiled. The Commonwealth introduced a series of photographs depicting the items Ms. Berrien testified were damaged or soiled.[5] She also prepared an estimate of the damage to her property and the cost to clean or replace both furniture and bed and bath items.[6] For example, her white sofa and love seat could not be cleaned, and the cost to replace that furniture was $3,000.00. The original purchase price was $6,000.00. Ms. Berrien's estimates were based on quotes she testified were received from various businesses such as Best Buy, Sleepys, and Bed Bath & Beyond. None of those quotes were attached to her estimate. A corresponding document prepared by State Farm provided a comprehensive estimate to repair damaged floors and walls, and clean carpets.[7] For example, wood floors in various rooms required a "screen and coat.. [as well as] dustless floor sanding." Carpets in different rooms had to be "cleaned and deodorized." The estimate for what State Farm called "Vandalism and Malicious Mischief" was $6,046.03. Ms. Berrien had a $1,000.00 deductible on her policy.

Ms. Berrien also testified that various items were stolen from her household. Those items include, but are not limited to, a "Blackberry Bold 9930, iPod nano w/Multi-touch, BackBeat Go 2 earbuds, HP Photosmart 7520," and jewelry. The total value of those items, according to Ms. Berrien, was approximately $4,500.00.

---

5. *See* Commonwealth Exhibits 5b-5q; 5s-5t.
6. *See* Commonwealth Exhibit 3.
7. *See* Commonwealth Exhibit 1.

The Commonwealth also introduced the testimony of Jason Parton from the Lehigh County Juvenile Probation Department, whose testimony related to the juvenile's ability to pay restitution. He began his supervision of the juvenile in July of 2014. His testimony outlined the juvenile's educational and extracurricular activities. Although the juvenile has no employment history, he plans to attend college and has no physical or intellectual limitations with the exception of a diagnosis of ADHD.

## Discussion

The juvenile and his fellow partygoers enjoyed themselves at Ms. Berrien's expense, but the juvenile now faces the unpleasant consequences of his actions. It is not suggested that the juvenile caused all of the damage to Ms. Berrien's home, but as the event planner, he certainly set in motion the events which caused the damage. The issue for this Court to resolve is whether the juvenile should be held responsible for the entire damage.

The statutory authority permitting an order of restitution is found in Section 6352 of the Juvenile Act,[8] which in pertinent part provides the following:

(a) General rule. — If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for the offense

---

8. 42 Pa.C.S. § 6301 et. seq.

committed and the development of competencies to enable the child to become a responsible and productive member of the community:

\* \* \*

(5) Ordering payment by the child of *reasonable* amounts of money as fines, costs, fees or restitution as deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child, including a contribution to a restitution fund. (emphasis added)

42 Pa.C.S. § 6352(a)(5).

In *In the Interest of M.W.*, 725 A.2d 729, 732-733 (Pa. 1999) it was explained that this section "does not contain language specifically requiring that the loss or injury be a direct result of the juvenile's wrongful conduct." *Id.* However, the juvenile court is invested with a "broad measure of discretion to *apportion responsibility* for damages based upon the nature of the delinquent act and the earning capacity of the juvenile." *Id.* (emphasis added) *See also In the Interest of J.G.*, 45 A.3d 1118, 1120-1121 (Pa. Super. 2012) *quoting Appeal of B.T.C.*, 868 A.2d 1203, 1204-1205 (Pa. Super. 2003).

The exercise of that discretion begins with the recognition that "one of the purposes of the Juvenile Act is to hold children accountable for their behavior." *In the Interest of D.G.*, 2015 WL 1813944 (Pa. Super.) *quoting In the Interest of M.W.*, 725 A.2d at 732. *M.W.* was an escapee from a residential juvenile treatment facility, who with several others, broke into a private residence. While inside, extensive damage was done to the residence, including punching holes in walls, damage to furniture, and setting fires on carpets. *Id.* at

730. The actual damages were $29,764.34, but the juvenile was only ordered to pay $1,000.00. The juvenile court reasoned that the sum of $1,000.00 was reasonable because "it was impossible to distinguish between damages caused by one trespasser and those caused by the others." *Id.* The Supreme Court in finding no abuse of discretion held that "[c]onsidering *M.W.*'s admitted participation in the criminal episode, his agreement to make reparation to resolve the matter, the small measure of restitution actually ordered (approximately three percent of the actual damages), and the rehabilitative policies underlying the Juvenile Act, the juvenile court appropriately ordered restitution."[9] *Id.* at 733.

Both counsel in their memorandum point to the four (4) factors identified in *In the Interest of Dublinski*, 695 A.2d 827 (Pa. Super. 1997) for fashioning a restitution award in juvenile court. Specifically, the juvenile court must consider the following:

(1) The amount of loss suffered by the victim; (2) The fact that defendant's action caused the injury; (3) The amount awarded does not exceed defendant's ability to pay; [and] (4) The type of payment that will best serve the needs of the victim and the capabilities of the defendant.

*Id.* at 829.

A review of these factors not only requires consideration of the juvenile's actions on the night of the party, but also his earning capacity. In *Dublinski*, it was explained that this third factor could be determined by examining relevant factors such as:

---

9. The juvenile appealed the order of restitution in *M.W.*, and the Supreme Court did not address the paltry amount of restitution ordered by the juvenile court.

[the juvenile's] mental ability, maturity and education; [ ] work history, if any; the likelihood of [ ] future employment and extent to which [the juvenile] can reasonably meet a restitution obligation; the impact of a restitution award on [the juvenile's] ability to acquire higher education and thus increase [the juvenile's] earning capacity; and [the juvenile's] present ability to make restitution.

*Dublinski*, 959 A.2d at 830.

Here, the juvenile's organizational skills to arrange the house party without Ms. Berrien's or any other adults awareness, suggests some level of sophistication. He also was able to secure Ms. Berrien's garage door code.

His background, as counsel for the juvenile concedes in her memorandum, belies any concerns about his earning capacity. "W.M. does not suffer from any physical disabilities that would prevent him from working, he plans on attending community college next year."[10] This assessment is consistent with the testimony of his probation officer.

The juvenile's present ability to pay was addressed in *Commonwealth v. B.D.G.*, 959 A.2d 362, 369-370 (Pa. Super. 2008) wherein it was explained that "such a circumstance is the norm when dealing with a juvenile and cannot serve as a disqualifying factor or else the court's ability to avoid restitution would cease to exist in the vast majority of the cases." *Id.* Furthermore, as stated in *B.D.G.*, but equally applicable to the within case, "given that [the juvenile] was eighteen years old at the time of the hearing and the trial court determined that he was an able-bodied,

10. W.M. Memorandum, p. 6.

intelligent, young man capable of securing employment, there was no abuse of discretion in fashioning an award that required payments over a long period of time." *Id.*; *See also In the Interest of J.E.D.*, 379 A.2d 288 (Pa. Super. 2005).

In *Dublinski*, which involved extensive vandalism to two unoccupied homes by the juvenile and "a group of her juvenile acquaintees," the amount of damage was $153,000.00. The juvenile was ordered to pay $10,000.00 towards restitution. On appeal, the restitution order was vacated for a variety of reasons, including the juvenile court's failure "to consider the proportion" of the damage caused by the juvenile. *Id.* at 829. In that regard, it was held that a "but-for" analysis in which the juvenile will be liable for restitution for all damages which could not have occurred "but for" his criminal conduct must be applied. *Id.* at 830 citing *Commonwealth v. Gerulis*, 616 A.2d 686, 697 (Pa. Super. 1992); *see also Commonwealth v. B.D.G.*, 959 A.2d at 367; *Commonwealth v. Pappas*, 845 A.2d 829, 842 (Pa. Super. 2004).

It is the Commonwealth's burden to prove its entitlement to restitution. *B.D.G.*, 959 A.2d at 376. The amount of restitution cannot be speculative, excessive, or lack support in the record. *In the Interest of D.G.*, 2015 WL 1813944 at * 6. *See also In the Interest of J.G.*, 45 A.3d 1118, 1122 (Pa. Super. 2012). *See also Commonwealth v. Dohner*, 725 A.2d 822, 824 (Pa. Super. 1999)(Restitution may be imposed only for those crimes to property or person where the victim suffered a loss that flows from the conduct that forms the basis of the crime for which the defendant is held criminally accountable).

Here, the amount of restitution requested is $28,308.52. Much of that request involves items that needed to be cleaned or items that Ms. Berrien contends were soiled. She is seeking to replace rather than clean the bedding and towels. The State Farm Estimate can be characterized as the costs to clean, paint, and refinish carpets, walls, and floors. Various estimates were presented to support the restitution claim along with photographs of various items. The pictures, however, were not vivid and failed to provide this Court with obvious evidence of the damage to all of the property. This observation is not intended to discount Ms. Berrien's observations, but merely to point out that a picture is not always worth a thousand words.

A portion of the restitution claim contends that items were stolen during the house party. The juvenile was not alleged to have stolen the items, and he was not charged with theft. The items may have been stolen on the night of the party, or some other day during Ms. Berrien's absence. *Commonwealth v. Reed*, 543 A.2d 587 (Pa. Super. 1988)(Restitution cannot be ordered for property which Commonwealth has not proven was either stolen or recovered by the defendant). Any order of restitution for items stolen based upon Ms. Berrien's subsequent inventory of missing items would be speculative and ordering restitution for those items would be illegal. Therefore, the sum of approximately $4,379.95 will be deducted from the restitution award. Likewise, this Court believes the request for food and Trojans has not been satisfactorily explained and so $361.49 will not be part of the restitution awarded.

The Commonwealth's request for the remaining $23,777.07 requires this Court to balance the need to hold the juvenile accountable for the damage to the Berrien

household, with his rehabilitative needs in conjunction with the "development of personal qualities that will enable him to become a responsible and productive member of the community." *B.D.G.*, 959 A.2d at 370. It is agreed that the juvenile hosted the house party, but it is not alleged that he caused all of the damage. In fact, it can be stated with some conviction that he was not responsible for the widespread soiling of items discovered by Ms. Berrien. The Commonwealth's theory remains that the damage could not have occurred without the juvenile's decision to allow others to attend the party. *See Dublinski*, wherein it was stated in dictum that, "[s]hould the court find...that appellant was responsible for providing the other juveniles with access to the victims' property, application of a 'but-for' analysis might place the entire responsibility for the damages upon appellant." *Dublinski*, 695 A.2d at 830. *See also Gerulis*, 616 A.2d at 697 ([D]amages which occur as a direct result of the crime are those which should not have occurred but for the defendant's criminal conduct.). However, *Dublinski* does require consideration of the "proportion" of the damage caused by the juvenile. In light of the circumstances, which does not include anyone else being held responsible for the damage, proportioning responsibility becomes a difficult task.

Based on the *Dublinski* interpretation of the "but-for" test, the only remaining question is whether the damage to the property "substantially decreased" its value. *See* 18 Pa.C.S. § 1106(a).[11] The measure of damage used by the Commonwealth for all of the bedding, towels, and furniture was replacement. However, caselaw suggests that the measure of damages in civil cases is either its

---

11. 1 Pa.C.S. § 1932(a).

reasonable value or replacement. *See* 1 Summ. Pa. Jur. 2d Torts § 9:77 (2d ed.)("[T]he measure of damages for the total loss or destruction of personal property is its reasonable value at the time of the loss considering its age, condition at that time and any post salvage value"); *Cf. Lynch Bridges & Company*, 678 A.2d 414, 415 (Pa. Super. 1996)("[R]eplacement cost as the measure of damages has been a long-established exception to the general rule as to market value of personal belongings.). *See also Gorham v. Springettsburg Township*, 41 Pa. D+C 4th 50 * 2 (1998).

Here, Ms. Berrien did suffer a loss, and the juvenile's conduct is inexcusable, but she is *not* entitled to refurnish her home. It is unclear if any of the items have been repaired or replaced. No testimony was presented as to the reasonable value the damaged items at the time of the loss or if any of them have been sold or even donated. In *Pikunse v. Kopehinski*, 631 A.2d 1049 (Pa. Super. 1993) a landlord disposed of a tenant's possessions. It was explained that "mere uncertainty as to the amount of damages will not bar recovery where it is clear that damages were the certain result of the defendant's conduct. *Id.* at 1051. In such cases, it was explained that "the fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable and inferential, as well as upon direct and positive proof." *Id.* at 1052 *quoting Delahantz v. First Pennsylvania Bank*, 464 A.2d 1243, 1257-1258 (Pa. Super. 1983).

Based upon a review of all the damages submitted and this Court's "flexibility to determine all the direct and indirect damages caused by the juvenile," an award of restitution is warranted. The amount of restitution awarded, while substantial, especially for someone

without assets, can be paid by the juvenile in installments beyond his twenty-first birthday. *B.D.G.*, 959 A.2d at 369-370; *Dublinski*, 695 A.2d at 830-831. A lump sum will not be required, and the installment plan will make sure that the juvenile understands the "[outrageousness] of his conduct, be deterred from repeating this conduct, and be encouraged to live in a responsible way." *In the Interest of M.W.*, 725 A.2d at 732.[12] Furthermore, this "type of payment will best serve the needs of the victim and capabilities of the [juvenile]." *Dublinski*, 695 A.2d at 829.

For all the foregoing reasons, the juvenile is Ordered to pay restitution in the sum of $15,813.74.[13]

## ORDER

AND NOW, this 11th day of May, 2015, after restitution hearings held in this matter, and consideration of the memorandum of law of counsel;

IT IS HEREBY ORDERED that the juvenile shall pay restitution in the amount of $15,813.74;

---

12. "In many instances, it will be necessary for a defendant to make substantial sacrifices in order to make restitution to the victim of his crime...[W]here sacrifice is necessary the [person] may learn to consider more carefully the consequences of his or her acts and thereby strengthen the offender's sense of responsibility." *Commonwealth v. Wood*, 300 Pa. Super. 463, 446 A.2d 948, 950 (1982).

13. This figure is based on the following:
1. Structural Damages (*See B.D.G.*, 959 A.2d at 371) $6,046.31
2. House Cleaning $ 600.00
3. BR Painting $ 550.00
4. Sofa (3) and love seat (2) and Sectional Cleaning $2,016.12
5. White Sofa and love seat replacement $3,000.00
6. Oriental Rug $2,402.33
7. Ashmont Bistro Table $ 199.98
8. Miscellaneous Items (partial damage) $1,000.00
a. Towels and Bedding
b. Swivel Stools
c. Yamaha PSR-650 Arranger
d. Frame by Rego

IT IS FURTHER ORDERED that the juvenile shall pay said restitution in installments with the payment of $2,000.00 by the end of the year 2015, and the sum of $3,500 per year until the balance is paid;

IT IS FURTHER ORDERED that the juvenile shall be held responsible for any sum not paid by his twenty-first birthday in accordance with 42 Pa.C.S. § 9728(a).