J-A01006-17

2017 PA Super 180

| | |
|---|---|
| NEXUS REAL ESTATE, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JOHN ERICKSON | |
| JOHN ERICKSON | |
| v. | |
| JASON COHEN, JLB RETASA SHADY, LLC AND NEXUS REAL ESTATE, LLC | |
| APPEAL OF: JLB RETASA SHADY, LLC AND NEXUS REAL ESTATE, LLC | No. 972 WDA 2016 |

Appeal from the Judgment Entered June 28, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): LT-15-1230

BEFORE: BOWES, OLSON AND STRASSBURGER,* JJ.

OPINION BY BOWES, J.:                                    **FILED JUNE 12, 2017**

JLB Retasa Shady, LLC ("JLB"), property owner, and Nexus Real Estate, LLC ("Nexus"), property manager, (collectively "Landlord"), appeal from the June 28, 2016 judgment entered in favor of tenant John Erickson. We affirm.

In July 2002, Mr. Erickson entered into a lease with the Reddy Family for an apartment in their forty-seven unit building located on Shady Avenue in the Squirrel Hill neighborhood of Pittsburgh. Initially, he paid $550 per month in rent, but that sum increased gradually to $700 per month over the

_____

* Retired Senior Judge assigned to the Superior Court.

twelve years he resided there under the Reddys' ownership. In November 2014, JLB bought the real estate.

On November 24, 2014, a two-foot-by-two-foot section of Mr. Erickson's bathroom ceiling fell into his bathtub. When Mr. Erickson notified the Reddy family of the ceiling collapse, he was advised that they no longer owned the building. They assured him, however, that they would convey his request for repairs to the new owners.

JLB had hired Nexus to manage the building. Mr. Erickson, as well as the other tenants, were notified by Nexus on December 12, 2014, that they would be required to sign a new lease within nine days or vacate their units by December 31, 2014. Prior to signing a new lease on December 19, 2014, Mr. Erickson met with Laura Beynon, the leasing agent for Nexus. She reassured him that the hole in his bathroom ceiling and failing heat would be remedied promptly. Although Mr. Erickson would have preferred that the defects were cured prior to signing a new lease, he maintained that he did not have time to pack and locate a new place in which to live in the nineteen–day window of time.

Mr. Erickson introduced photographs depicting the condition of his bathroom ceiling as of December 12, 2014. When the promised repairs had not been undertaken by January 2015, he telephoned Nexus. Nexus employees told Mr. Erickson they would take care of it. The heat failed entirely in February, and Mr. Erickson could not remain in his apartment. He

stayed elsewhere for most of the month, but returned at the end of February with a space heater and a military sleeping bag.

Mr. Erickson renewed his complaints in March, but to no avail. He had no heat throughout the winter and the hole in the bathroom ceiling was not repaired. On June 10, 2015, Mr. Erickson discovered the air conditioning also did not work. When he reported this latest deficiency to Nexus via email, he received reassurances that day, and again on June 16, that Nexus would fix the problem. Nexus finally installed a window air-conditioning unit in July. Mr. Erickson notified the management company on July 28, 2015 that the unit was not cooling and that the daytime temperature in his apartment was in the mid-nineties. Nexus promised to address the problem by July 30, but did not do so.

Mr. Erickson offered into evidence photographs taken on June 14, 2015 that depicted water entering through the hole in his bathroom ceiling. His complaints to Nexus were ignored. In the beginning of August, the Vice President of Nexus, Craig Falk, was on the premises talking to a roofer. Mr. Erickson availed himself of the opportunity to discuss the hole in the ceiling and the non-working air conditioning and Mr. Falk accompanied him to his apartment. Mr. Falk assured him, "We'll have it fixed." N.T., 5/5/16, at 22. Nothing was done.

On August 5, 2015, Mr. Erickson emailed Nexus and advised that it was raining in his bathroom, there was visible mold, and that he was

coughing. He received no response. On August 16, he begged Nexus to do something, but again, there was no response. Finally, Nexus replied to his August 25th plea, confirmed on August 27, 2015, that it found leaks in the ceiling, and advised that it would be making repairs within a few days.

Mr. Erickson left his apartment and returned on September 5, 2015. A significant part of his bathroom ceiling had collapsed during his absence. He was excited when, on September 10, Nexus appeared to have fixed the hole in the ceiling. "That excitement faded away when" he moved the dropped ceiling tiles and realized that "the big gaping hole was still present." *Id*. at 25. He could see mold in the ceiling. He closed the door to the bathroom and left the apartment for two months. When he returned on December 6, 2015, the ceiling tiles had fallen and what remained of the plaster ceiling was hanging. He captured the condition in photographs.

Finally, on December 11, Nexus arranged for someone to rip out the ceiling to the bare rafters and scrub it with bleach to ameliorate the mold. Shortly before this occurred, Mr. Erickson had gone to the Department of Permits, Licenses and Inspections, and the agency had inspected his apartment on December 9, 2015, and filed a report. Nexus employees also told Mr. Erickson that the Allegheny Health Department had contacted them about the possibility of mold in his bathroom. Mr. Erickson believed that his complaints to city agencies prompted Nexus to hire the mold remediation company and repair the ceiling.

Nonetheless, the water problem persisted. Plastic had been stapled into the rafters and was collecting water when it rained. Instead of fixing the roof, Nexus placed makeshift gutters of corrugated plastic in the rafters to collect the rainwater dripping through the roof and channel it to the outside. It was not until December 17, 2015, that Nexus dry walled Mr. Erickson's bathroom ceiling. By that time, he had already made plans to vacate the premises.

At the non-jury trial, Mr. Erickson also complained that when he signed the new lease, Ms. Beynon made no mention of major outdoor construction. He offered the testimony of Rick Beadling, another tenant, who confirmed that Ms. Beynon told him only that there would be landscaping work on the premises. Mr. Erickson introduced photographs that depicted scaffolding covering the front of the building starting in January 2015, plywood sheets over trenches in lieu of sidewalks, and no lighting or railings. He described the condition as treacherous. Although Nexus recommended that the tenants use alternate entrances, Mr. Erickson testified that those routes were impassable especially at night. The problems with safe ingress and egress remained throughout the summer of 2015, and it was not until October that proper lighting was installed.

In addition to these issues, Mr. Erickson complained that construction noise commenced at 6:30 a.m., and, as the project neared conclusion, persisted seven days per week. Water service to the apartments was shut

off at least twenty-five times, a fact that was confirmed by Mr. Beadling. In October 2015, Mr. Erickson began paying his rent into an escrow account.

The situation spawned two lawsuits. Landlord filed a magisterial district justice action against Mr. Erickson claiming that he breached the lease by failing to make timely rent payments totaling $1,575. Following judgment in Mr. Erickson's favor, Landlord appealed to compulsory arbitration. On February 16, 2016, arbitrators entered an award in favor of Mr. Erickson, and Landlord appealed to the court of common pleas. A non-jury trial was scheduled for May 5, 2016.

In the meantime, Mr. Erickson filed an action against JLB, its principal Jason Cohen, and Nexus with the magisterial district justice, alleging breach of the warranty of habitability and violations of the Unfair Trade Protection and Consumer Protection Law, ("UTPCPL"). That action subsequently was appealed to arbitration, and then to the Court of Common Pleas of Allegheny County. By order dated May 5, 2016, and with the consent of the parties, the Honorable Alan Hertzberg consolidated both actions for non-jury trial. An award in favor of Mr. Erickson was entered on Landlord's breach of contract claim. Mr. Erickson prevailed on his claims against JLB and Nexus. The court tripled the $9,750 in rent paid by Mr. Erickson due to violations of the UTPCPL for a total of $29,250, plus it awarded attorney's fees of $2,900, for a total verdict of $32,150.

After a motion for post-trial relief was filed seeking to modify the verdict, the trial court, by order dated June 8, 2016, reduced the verdict from $32,150 to $29,900, and entered judgment. Following a motion for reconsideration, the trial court again modified its verdict to $23,150, but provided that Mr. Erickson was to retain the rent he had escrowed.

Landlord timely appealed and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. It challenged the trial court's award of treble damages under the Pennsylvania UTPCPL, 73 P.S. § 201-1, *et seq*. On appeal, Landlord presents two issues:

1. Whether the Court committed an error of law or abused its discretion in awarding triple damages pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 P.S. § 201-1, et seq. where the evidence clearly does not support such a finding.

2. Whether the Court erred in awarding full rent reimbursement as "actual damages" where insufficient proof was provided to support the claim that the leased apartment was uninhabitable.

Appellants' brief at 4.

Preliminarily, we find that Landlord's second issue is waived as it was not identified in its Pa.R.A.P. 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Since Landlord's first issue implicates the legal standard for an award of treble

damages under the UTPCPL, our standard of review is *de novo*, and our scope of review is plenary. ***Schwartz v. Rockey***, 932 A.2d 885 (Pa. 2007).

Landlord acknowledges that the UTPCPL applies to landlord-tenant cases, but maintains that treble damages awards are reserved only for the most egregious cases where the landlord's conduct was deceitful and illegal. In support of its position, Landlord directs us to our unpublished, non-precedential memorandum in ***Pierre v. MP Cloverly Partners, LP***, 133 A.3d 64 (Pa.Super. 2015), in contravention of this Court's rules.[1] As additional examples of the type of egregious conduct that merited treble damages, Landlord cites ***Pikunse v. Kopchinski***, 631 A.2d 1049 (Pa.Super. 1993), where the landlord discarded furniture and appliances in retaliation for the tenant's failure to pay rent, and ***Wallace v. Pastore***, 742 A.2d 1092

_____

[1] ***See*** 210 Pa. Code § 65.37, which provides in pertinent part:

> (A)   An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding . . .

Furthermore, in the memorandum decision cited, the jury rejected tenant's contention that the apartment was vermin infested, and found no violation of UTPCPL that would support any damages. Thus, we did not reach the issue of treble damages.

(Pa.Super. 1999), where the landlord withheld the tenant's security deposit and misrepresented the existence and extent of property damage.

Furthermore, Landlord argues that the record reveals no deceptiveness on its part. It maintains that its representatives met with Mr. Erickson, inspected his apartment, explained the process for submitting maintenance requests, and provided the opportunity for him to note in the new lease that certain conditions required attention. He did not avail himself of that opportunity. According to Landlord, Mr. Erickson's periodic requests for maintenance were acted upon after he followed the proper procedures and repaired, and treble damages were not warranted.

Mr. Erickson counters that the trial court properly applied the standard enunciated in **Schwartz**, **supra**, and rejected Landlord's claim that egregious conduct was required to support an award of treble damages. He maintains that the trial court heeded the direction of the Supreme Court to "focus on the presence of intentional or reckless, wrongful conduct." **Id**. at 898. Furthermore, he points to a record replete with instances of Landlord's deception and false promises.

In **Schwartz**, our Supreme Court discussed the role of the court in assessing treble damages pursuant to the UTPCPL:

> [T]he statute, on its plain terms, does not provide any standard pursuant to which a trial court may award treble damages. In construing its terms, we find particularly relevant the principles of statutory construction authorizing consideration of the occasion and necessity for the statute, the mischief to be

remedied, the object to be attained, and the consequences of a particular interpretation. **See** 1 Pa.C.S. § 1921(c).

**Schwartz**, **supra** at 898. The Court recognized that the UTPCPL is a consumer protection statute, in which the General Assembly has employed broad phrasing that our Supreme Court has instructed us to construe liberally. Recognizing that the UTPCPL's treble damages provision had "both punitive and remedial aspects," the **Schwartz** Court concluded that the trial court's discretion "should not be closely constrained by the common-law requirements associated with the award of punitive damages." **Id**. **see also Meyer v. Cmty. College of Beaver County**, 93 A.3d 806, 815 (Pa. 2014) (noting the hybrid nature of treble damages with both punitive and remedial aspects). Nonetheless, it cautioned that the trial court's discretion was not unfettered. The Supreme Court concluded that trial courts "should focus on the presence of intentional or reckless, wrongful conduct, as to which an award of treble damages would be consistent with, and in furtherance of, the remedial purposes of the UTPCPL." **Schwartz**, **supra** at 897-898. Appellate courts should review such decisions "for rationality, akin to appellate review of the discretionary aspect of equitable awards." **Id**. at 898; **Dibish v. Ameriprise Fin., Inc**., 134 A.3d 1079, 1091 (Pa.Super. 2016).

The trial court applied the correct legal standard in making its determination. It found "multiple instances of intentional or reckless,

wrongful conduct by Nexus."[2]  Trial Court Opinion, 8/29/16, at 2.  The court noted Nexus's December 2014 assurances that defects in Mr. Erickson's ceiling and heat would be remedied immediately.   N.T., 5/5/16, at 14. Despite repeated complaints, the heat and air conditioning in Mr. Erickson's apartment were non-functioning until September 10, 2015.   Thus, Mr. Erickson endured a winter without heat and a summer without air conditioning.  The trial court pointed to the report authored by the City of Pittsburgh Department of Permits, Licenses and Inspections indicating that the large hole in the ceiling of the bathroom had not been properly repaired even after Mr. Erickson vacated the unit.  Exhibit O.

The court credited Mr. Erickson's testimony that when he contacted Nexus about the ceiling and the heat and air conditioning, they promised to take care of it or send it to maintenance.  N.T., 5/5/16, at 15-16.  Copies of email correspondence with Nexus confirmed that the latter promised that the repairs would be made "today" or "as soon as possible," which did not occur. The court found credible Mr. Erickson's testimony recounting his conversations with Nexus Vice President Craig Falk in August 2015, and expressly found incredible Nexus's representation that Mr. Erickson did not

---

[2]   The trial court referred to both defendants as Nexus throughout. However, it noted that, although Nexus was named as landlord in the lease, Nexus directed Mr. Erickson to make monthly rental payments payable to JLB, the property owner.  *See* Trial Court Opinion, 8/29/16, at 1 n.1.

report the problem with the heat until June 2015. The court concluded that Nexus could have devoted the necessary resources to repair Mr. Erickson's ceiling, heat, and air conditioning by January or February 2015, but "deliberately delayed both in responding . . . and in devoting the resources necessary for the repairs." Trial Court Opinion, 8/29/16, at 5. Nexus's false promises and inaction was "cruel and callous behavior," and the type of intentional or reckless, wrongful conduct that warranted treble damages under *Schwartz*.

There is no legal support for Landlord's contention that the trial court should have applied some amorphous egregiousness measure in determining whether to award treble damages. The trial court applied the proper legal standard. Furthermore, we have no basis to disturb the court's credibility determinations. In short, the record supplies a firm rational basis for the trial court's finding that the harm to Mr. Erickson was caused by Landlord's intentionally wrongful and deceptive conduct that supported an award of treble damages.

Judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2017