528 A.2d 643

PENN ELECTRIC SUPPLY CO., INC. and Coatesville Electric Supply Co., Inc., Appellants,

v.

BILLOWS ELECTRIC SUPPLY COMPANY, INC.

Superior Court of Pennsylvania.

Argued Sept. 18, 1986.

Filed July 1, 1987.

Gary Schildhorn, Philadelphia, for appellants.

Jonathan Braff, Philadelphia, for appellee.

Before CIRILLO, President Judge, and BECK and JOHNSON, JJ.

BECK, Judge:

The issue before us is whether in the context of a conversion action the court is required to accept the plaintiffs' valuation of damages where defendant fails to identify and value the goods he converted. We find that the court is not required to accept the plaintiffs' valuation and therefore affirm the trial court.

Plaintiff-appellants, Penn Electric Supply Company and Coatesville Electric Supply Company (hereinafter collectively Penn Electric), assert that in a conversion action the court must accept the plaintiff's valuation as to damages unless the defendant satisfies the burden of proving lesser damage. Penn Electric contests the dollar amount of damages awarded to them against defendant-appellee Billows Electric Supply Company, Inc. (Billows Electric) after Penn Electric prevailed in a bench trial in a conversion action.

This case involves a somewhat complicated series of transactions relating to certain goods, namely tools, electrical supplies and trailers, which we will hereafter refer to collectively as "the goods." The goods originally belonged to B & W Electric Construction Company, Inc. (B & W).[1] In 1971, appellee Billows Electric perfected a security interest in all of B & W's inventory, equipment, accounts receivable, furniture, machinery, and proceeds from the sale of any of the above. In 1973, B & W went out of business and, pursuant to the security agreement, Billows Electric alleges that it acquired ownership of the goods. After the demise of B & W, David L. White, its president, started Gar-Dan Electrical Construction Company (Gar-Dan) at the same address, and retained possession of the goods in a transaction the nature of which is in dispute. On October 14, 1976, Penn Electric entered into a security agreement with Gar-Dan, under which Penn Electric procured a perfected security interest in all of the inventory, tools, equipment, accounts receivable and all the property of Gar-Dan. In March of 1977, Gar-Dan went out of business and then Billows Electric removed the goods.

Penn Electric filed a complaint in trespass against Billows Electric alleging that Penn Electric had a perfected security interest in the goods and that therefore Billows Electric converted the goods when it removed them. Billows Elec-

1. The record does not establish conclusively that the property we refer to as "the goods" is in fact the same property in each transaction we describe herein. Since that fact is not at issue in this appeal, we assume without deciding that all transactions herein involved the same goods, for convenience in setting out the facts.

tric defended on the ground that it had merely loaned the goods to Gar-Dan and thus Gar-Dan had only a possessory and not an ownership interest. Billows Electric contended, therefore, that Gar-Dan's possessory rights in the collateral were not adequate to permit Penn Electric's security interest to attach. Under this theory, Billows Electric could not be liable in conversion when it removed the goods.

The case was tried without a jury, and the trial court rendered a verdict in favor of Penn Electric and against Billows Electric in the amount of $14,500, plus interest from the date of conversion. Post-trial motions were denied. The verdict was reduced to judgment. Billows Electric appealed the judgment in favor of Penn Electric,[2] and Penn Electric cross-appealed on the adequacy of the damages awarded to it. In this instant appeal, only the damages question is before us.

Appellant, Penn Electric, argues: (1) that the trial court erred in limiting damages to $14,500; and (2) that the trial court erred in declining to award Penn Electric punitive damages.

■ Penn Electric's first argument is that the trial court should have awarded damages in excess of $50,000 based on the testimony of Penn Electric's expert. Even though the figure suggested by the expert was clearly a broad estimate and was based on no precise accounting, Penn Electric argues that in a conversion action, once plaintiff establishes the measure of his damages, the burden of proof to rebut plaintiff's claim is on the defendant. Therefore, since Billows Electric did not sustain its burden, Penn Electric argues, the trial court was required to accept Penn Electric's calculation of damages, $50,000.

Penn Electric bases its assertion on Billows Electric's wrongful taking of the goods and its inability to produce an inventory of them. Penn Electric argues that:

2. 526 A.2d 820, No. 782 Philadelphia 1986.

It is ... axiomatic that where a defendant "... by his own wrongdoing prevents another from accurately estimating the value of that which he took, the highest value in kind may be charged against him, and the burden is upon him to show what it was that he actually took." *McCrown [sic] v. Quigley,* 147 Pa. 307, 309 [23 A. 805] (1892); *see also, Jacob Greenberg & Sons, Inc. v. Melvin Kolb, Inc.,* 65 Lanc.Rev. 213, 217 (1976).

Brief of Appellant at 11.

Appellant cites *McCown v. Quigley,* 147 Pa. 307, 23 A. 805 (1892), as support for the broad principle that a defendant wrongdoer has the burden to show the identity and value of the goods in question. If he cannot satisfy this burden, then the court may assess damages against him based on the value asserted by the plaintiff. Translating this principle to the instant case, Penn Electric argues, the court should have assessed damages of $50,000 against Billows Electric. This figure represented Penn Electric's valuation. The court, according to Penn Electric, was duty bound to accept the $50,000 figure because Billows Electric, having been found liable in conversion, did not satisfy its burden of identifying and valuing the goods it took. We disagree and conclude that Penn Electric misperceives the holding in *McCown.* In *McCown* the Pennsylvania Supreme Court affirmed the trial judge's instruction which directed the jury to consider the reasonableness of the plaintiff's assessment of damages, thereby implying plaintiff had the burden of proving reasonable damages. In addition, however, and in conflict, the *McCown* trial court instructed the jury that the defendant wrongdoer had the burden of showing damages. In light of this contradiction we do not conclude that *McCown* requires a trial court to accept plaintiff's assessment of damages once the defendant fails to identify and value the goods converted.

This principle of law which is urged upon us by Penn Electric is contrary to the traditional principle for establishing damages in this Commonwealth and in other jurisdictions. The general rule in this Commonwealth is that the

plaintiff bears the burden of proof as to damages. *Griffin v. Tedesco,* 355 Pa.Super. 475, 513 A.2d 1020 (1986); *Delahanty v. First Pennsylvania Bank,* 318 Pa.Super. 90, 464 A.2d 1243 (1983).

The determination of damages is a factual question to be decided by the fact-finder. *Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215 (1987); *Delahanty.* The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses; *Delahanty.* Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. *Id.* The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof. *Id. See also Rea v. Ford Motor Co.,* 355 F.Supp. 842, 879 n. 9 (W.D.Pa.1973), *vacated on other grounds,* 497 F.2d 577, *cert. denied* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 106 (1974).

In evaluating the proposition urged upon us by Penn Electric we have examined the law in other jurisdictions. We have not uncovered another jurisdiction that, in conversion actions, places the burden of proof as to damages on the defendant so as to require the court to accept the plaintiff's figure. *See, e.g., Ball v. Posey,* 176 Cal.App.3d 1029, 222 Cal.Rptr. 746 (1986); *Epstein v. Automatic Enterprises,* 6 Conn.App. 484, 506 A.2d 158 (1986); *Hoover v. Louisiana,* 393 So.2d 187 (La.Ct.App.1980); *Willis v. Ed Hudson Towing, Inc.,* 109 Mich.App. 344, 311 N.W.2d 776 (1981); *Fortune v. City National Bank & Trust Co.,* 671 P.2d 69 (Okla.Ct.App.1983); *Industrial Welding Supplies v. Atlas Vending Co.,* 276 S.C. 196, 277 S.E.2d 885 (1981). The cases hold that plaintiff is not relieved of the burden of proving the amount of damages simply because the defendant "by his own wrong has precluded a more precise computation of damages." *Locklin v. Day-Glo Color Corp.,* 429

F.2d 873, 879 (7th Cir.1970), *cert. denied* 400 U.S. 1020, 91 S.Ct. 584, 27 L.Ed.2d 632 (1971). *See also Spray-Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226, 1242 (7th Cir.1982), *aff'd Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). The general rule is that if the defendant wishes to argue for a reduction in damages or to rebut the adequacy of plaintiff's evidence, the burden of such a showing is on the defendant. But failure to meet this burden does not require the court to assess damages at whatever figure the plaintiff had shown, however uncertain. *See Taylor Rental Corp. v. J.I. Case Co.*, 749 F.2d 1526 (11th Cir.1985); *Knuth v. Erie-Crawford Dairy Cooperative Ass'n*, 463 F.2d 470 (3rd Cir.1972), *cert. denied* 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1973).

To place the burden of proof on the defendant, as Penn Electric suggests, would be unworkable. For example, a plaintiff with a modest loss could assert a very large loss. Unless defendant satisfies the burden of proof as to the identity and value of the goods, the plaintiff would be entitled to damages amounting to his asserted claim. Such a result deprives the fact finder of its traditional function of estimating damages.

We hold that in a conversion action it is for the trier of fact to consider the evidence of damages from both the plaintiff and the defendant and to measure the value of the damages in the context of plaintiff's burden.

In the instant case the court was asked to accept the value of the total property converted as being "in excess of $50,000," based on the testimony of Penn Electric's witness Mr. Russell Fox, that concluded with this exchange:

Q. Mr. Fox, to the best of your recollection, what was the value of the items, including everything you've mentioned—the trailers, the benders, the wire, the electrical supplies, the other tools—that were removed by Billows during the week of March of 1977?

A.   If I sat down—if I had a copy, which I don't—Bruce has one copy and Dave White has the other copy, which is the owner of the Gar-Dan Electric—and if I sat down and itemized and priced every item, it would go way over $50,000 with all the material and tools.

N.T. October 9, 1985, at 15.

The trial judge, sitting as the trier of fact, considered testimony from both parties as to damages and awarded appellant Penn Electric damages in the amount of $14,500. In its opinion denying post-trial motions the trial court stated:

> The trial judge in the instant case heard testimony on the value of property from a single witness of plaintiff, Mr. Russell Fox, a former employee of Gar-Dan Electric.   Mr. Fox testified from his recollection that the value of the property taken eight years ago was in excess of $50,000 (N.T. 15), although he never priced the items (N.T. 23) either individually or as a lot.   Mr. Irving Fuhs, an employee of Billows Electric Supply Co. of Haddon Heights, testified on behalf of the defendant that he examined the property taken from Gar-Dan (N.T. 97). Mr. Fuhs, based solely on his recollection, valued the serviceable material taken from Gar-Dan at $5,800.00 (N.T. 98–108):
>
> | | |
> |---|---:|
> | 12 gang boxes (at $50.00 each) | 600.00 |
> | 1 bender | 1500.00 |
> | 1 crimper | 400.00 |
> | 1 trailer | 1800.00 |
> | wire | 1500.00 |
> | Total | 5800.00 |
>
> In addition, Mr. Bruce Billow, of Billows Electric Supply, testified for the defendant that certain circuit breakers taken from Gar-Dan were valued at $2,000 (N.T. 138). The total valuation made by the defendant was $7,800. In assessing this testimony, it was the court's opinion that plaintiff's estimate was overstated and that defendant's estimate was understated.   Without more specific evidence proffered by the parties, it was the court's

opinion that $14,500.00 was a fair estimate of the true value of the converted property.

Trial op. at 4–5.

As we noted above, making such an estimate is within the power of the fact-finder. We conclude that the trial court did not abuse its discretion in setting damages at $14,500.

■ Penn Electric's second contention is that the trial court should have awarded it punitive damages. Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others. *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984). Whether to award punitive damages is within the discretion of the fact-finder. *Delahanty.*

Penn Electric's assertions of alleged outrageous conduct by Billows Electric are not supported by the record. We find that the trial court did not abuse its discretion in declining to award punitive damages to Penn Electric.

Judgment affirmed.

JOHNSON, J., files concurring opinion.

JOHNSON, Judge, concurring:

Although, I agree with the result reached by the majority, I fear that the majority gives appellant credit for a stronger argument than he actually has under *McCown v. Quigley,* 147 Pa. 307, 23 A. 805 (1892). *McCown* involved a haberdasher who was a partner in one firm and a sole proprietor in his own men's furnishing shop. The issue in *McCown* was for the jury to decide the contents of the packages and boxes which Quigley had appropriated to his own account. The plaintiffs estimated the values assuming certain contents. The trial court charged the jury, in effect, that if Quigley wanted to dispute what was in the boxes, he had to come forward with affirmative evidence. Therefore, I do not read *McCown* as approving a jury charge that "the defendant wrongdoer had the burden of showing damages." Slip Opinion, at 5. The trial judge merely stated that "the burden is upon [the wrongdoer] to show *what it was* that he

actually *took.*" This is not a question of "showing damages" so much as it is a statement that it is the responsibility of the wrongdoer to seek to *rebut* the plaintiff's testimony.

Utilizing the preceding analysis, I concur in the holding of the majority that the trier of fact must consider evidence of damages from both the plaintiff and defendant and must measure the value of damages in the context of the plaintiff's burden to prove the value of the converted property.