J-A19003-20

2020 PA Super 254

| | | |
|---|---|---|
| WILLIE WITHERSPOON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEBORAH MCDOWELL-WRIGHT | : | No. 2293 EDA 2019 |

Appeal from the Judgment Entered June 14, 2019
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): July Term, 2016 No. 02776

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

OPINION BY PANELLA, P.J.: **FILED OCTOBER 23, 2020**

Willie Witherspoon appeals from the judgment entered on June 14, 2019, in the Philadelphia County Court of Common Pleas, in his favor and against Deborah McDowell-Wright[1] in the amount of $7,500 following a non-jury trial in this conversion action. On appeal, Witherspoon complains the amount of damages the trial court awarded him was against the weight of the evidence. Initially, we conclude that McDowell-Wright's death during the pendency of this appeal does not affect our jurisdiction. Further, we conclude the trial court did not abuse its fact-finding discretion, so we affirm.

Witherspoon and McDowell-Wright were former paramours who resided together at McDowell-Wright's residence in Philadelphia, Pennsylvania, from

_____

[1] As will be discussed in more detail below, McDowell-Wright passed away on March 1, 2020, while this appeal was pending.

2002 to 2015. The relationship turned acrimonious, and in November of 2015, McDowell-Wright evicted Witherspoon from the home by obtaining, as alleged by Witherspoon, numerous "fraudulent" protection from abuse orders. Civil Complaint, 7/26/2016, at ¶ 4. Witherspoon also averred that McDowell-Wright converted his personal property after he left the residence. *See id.*, at ¶ 5.

Witherspoon filed a *pro se* complaint, on July 26, 2016, alleging conversion, breach of verbal loan agreements, and damages suffered based on false eviction. The matter proceeded to trial on September 27, 2017. At that time, Witherspoon had retained counsel and McDowell-Wright was *pro se*. McDowell-Wright produced a discharge in bankruptcy, and the trial court entered a *non pros*, finding the matter barred.

Witherspoon subsequently filed a petition to remove the *non pros*. The court heard oral argument on the matter and thereafter, vacated the judgment of *non pros* on January 9, 2018.[2] The court also granted Witherspoon leave to file an amended complaint, which he did on January 26, 2018, solely alleging conversion and seeking damages in the amount of $223,510.

A two-day trial began on March 28, 2019. Based on Witherspoon's allegations that he had been engaged in the hobby of rebuilding classic cars and McDowell-Wright had converted his tools and equipment, the court narrowed the focus of the testimony to the value of the missing property. The

---

[2] The court based its decision on the finding that McDowell-Wright's bankruptcy did not bar the action. *See* Trial Court Opinion, 10/9/2019, at 2.

following day, the court found in favor of Witherspoon in the amount of $7,500.

Witherspoon filed a timely post-trial motion, seeking reconsideration of the damages award. On June 14, 2019, the court denied Witherspoon's motion and entered judgment reflecting the verdict. This appeal followed.[3]

Preliminarily, we acknowledge we are confronted with a unique predicament concerning the matter before us. On August 7, 2020, prior to argument, McDowell-Wright's daughter filed a "Suggestion of Death" in this Court, indicating that McDowell-Wright passed away on March 1, 2020.[4] No additional information has been filed in the Court regarding this issue, and it does not appear that a personal representative has been appointed or that an estate has been raised. Furthermore, as noted above, during the pendency of the underlying proceeding, McDowell-Wright represented herself. No one filed an appellee's brief.

Pennsylvania Rule of Appellate Procedure 502, which provides guidance when a party dies, states:

> **(a) Death of a party.--** If a party dies after a notice of appeal or petition for review is filed or while a matter is otherwise pending in an appellate court, the personal representative of the deceased party may be substituted as a party on application filed by the

---

[3] On July 19, 2019, the trial court ordered Witherspoon to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Witherspoon filed a concise statement on August 12, 2019. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 9, 2019.

[4] Witherspoon acknowledged he received notice of McDowell-Wright's death in his appellant's brief. **See** Appellant's Brief, at 3 n.1.

- 3 -

representative or by any party with the prothonotary of the appellate court. The application of a party shall be served upon the representative in accordance with the provisions of Pa.R.A.P. 123. If the deceased party has no representative, any party may suggest the death on the record and proceedings shall then be had as the appellate court may direct. If a party against whom an appeal may be taken or a petition for review may be filed dies after entry of an order below but before a notice of appeal or petition for review is filed, an appellant may proceed as if death had not occurred. After the notice of appeal or petition for review is filed, substitution shall be effected in the appellate court in accordance with this paragraph. If a party entitled to appeal or petition for review shall die before filing a notice of appeal or petition for review, the notice of appeal or petition for review may be filed by his personal representative, or, if he has no personal representative, by his counsel, within the time prescribed by these rules. After the notice of appeal or petition for review is filed, substitution shall be effected in the appellate court in accordance with this paragraph.

Pa.R.A.P. 502(a). In relevant part, Rule 502 "permits any party to make a suggestion of death on the record. The Rule then states that proceedings may be had as this court directs. The open-endedness of this Rule is evident." ***Commonwealth v. Bizzaro***, 535 A.2d 1130, 1132 (Pa. Super. 1987).

We note there is a dearth of case law dealing with Rule 502(a) and particularly, the totality of the circumstances before us – in which the decedent is the appellee, she was acting *pro se*, the underlying judgment has been entered against her, and she passed away after Witherspoon filed a notice of appeal but before he had filed his Appellant's Brief. However, a review of existing authorities leads us to conclude this appeal is ripe for our review.

If McDowell-Wright had passed prior to the entry of judgment in this matter, the trial court would have been without subject matter jurisdiction to proceed further until a personal representative had been appointed in her place. **See Grimm v. Grimm**, 149 A.3d 77, 84 (Pa. Super. 2016) (holding that the mandatory language of Pa.R.Civ.P. 2355 required substitution for a deceased defendant to re-establish trial court's subject matter jurisdiction). In contrast, if McDowell-Wright had passed after the judgment had been entered, but before Witherspoon filed a notice of appeal, the Rules of Appellate Procedure provide that Witherspoon would be entitled to proceed as if McDowell-Wright had not died. **See** Pa.R.A.P. 502(a).

Here, McDowell-Wright's daughter, who is not a party to this appeal, filed a suggestion of McDowell-Wright's death with this Court that Witherspoon has not challenged. In this document, McDowell-Wright's daughter asserts that McDowell-Wright passed on March 1, 2020. This date would be after Witherspoon filed his notice of appeal on August 26, 2019, but before he filed his Appellant's Brief with this Court on March 21, 2020. The Rules of Appellate Procedure allow for, but do not mandate, substitution under these circumstances. **See** Pa.R.A.P. 502(a) (providing that "the personal representative of the deceased party may be substituted as a party on application filed by the representative or by any party").

In contrast to the rules governing the trial court, the fact that no personal representative has been substituted here does not act to deprive this

Court of subject matter jurisdiction, as Rule 502(a) does not mandate substitution under these circumstances. ***See***, ***e.g.***, ***Grimm***, 149 A.3d at 84 (addressing appellant's claims against deceased appellee even though there had been no substitution for the deceased appellee). We therefore must next consider whether McDowell-Wright's death renders this appeal moot.

In ***Shiomos v. Commonwealth State Employees' Ret. Bd.***, 626 A.2d 158 (Pa. 1993), the Pennsylvania Supreme Court determined that an appellant's passing did "not render the case moot as the outcome may have relevance to his estate and also, the questions raised in this appeal have an impact on recurring issues statewide." ***Id.***, at 159 n.1.

Applying ***Shiomos*** to the present matter, we conclude that McDowell-Wright's death does not render the case moot as the outcome will have relevance to her estate and Witherspoon's rights as a purported creditor of her estate. Accordingly, we will address the substantive issue raised on appeal.

In Witherspoon's sole argument, he claims the trial court abused its discretion by awarding him only $7,500 of his demand that exceeded $75,000 despite finding McDowell-Wright liable for conversion of Witherspoon's property. ***See*** Appellant's Brief, at 2. Witherspoon states the $7,500 determination "is clearly against the weight of the evidence." ***Id.***, at 5.

Generally, our review of damage awards is straightforward:

Our standard of review of a trial court's award of damages is narrow: In reviewing the award of damages, the appellate courts

- 6 -

should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence. If the verdict bears a reasonable resemblance to the damages proven, we will not upset it merely because we might have awarded different damages.

*McManamon v. Washko*, 906 A.2d 1259, 1285 (Pa. Super. 2006) (citations omitted). However, when evaluating the value of personal property that has been lost due to a defendant's wrongdoing, the analysis becomes slightly more complex.

Here, the trial court found that Wright had converted Witherspoon's personal property. "Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Brinich v. Jencka*, 757 A.2d 388, 403 (Pa. Super. 2000) (citation omitted). "[I]t is the traditional function of the fact finder in conversion actions to estimate damages." *Pikunse v. Kopchinski*, 631 A.2d 1049, 1051 (Pa. Super. 1993). Estimation of the damages, as opposed to more certain methods of valuation, is often necessary:

> While the measure of damages for conversion is the market value of the converted property at the time and place of conversion, such a value is often unascertainable. It is also well-settled that mere uncertainty as to the amount of damages will not bar recovery where it is clear that the damages are the result of defendant's conduct. In addition, replacement cost as the measure of damages has been a long-established exception to the general rule as to market value of personal belongings:
>
> > What a thing will bring in the market at a given time is perhaps the measure of its value then; but it is not the only one. Many of the goods for which compensation is here asked were of such a character that their market value could not compensate for their loss, as, for instance, clothing and

- 7 -

> other personal belongings. It cannot be said that they had no value in the open market, since at public auction they would most likely have brought something, but manifestly the price they would have there commanded would not represent their value to the owner . . . Where this is the case the just rule of damages is the actual value of the thing destroyed to him who owns it, taking into account its cost, the practicality and expense of replacing it, and such other consideration as in the particular case affect its value to the owner.
>
> *Lloyd v. Haugh & Keenan Storage & Transfer Co.*, 223 Pa. 148, 72 A. 516, 518 (1909).

*Lynch v. Bridges & Co.*, 678 A.2d 414, 415-416 (Pa. Super. 1996) (some citations omitted).

In *Delahanty v. First Pennsylvania Bank*, 464 A.2d 1243, 1257 (Pa. Super. 1983), this Court described the fact-finder's role regarding the determination of damages as follows:

> Though justice and public policy require that the wrongdoer bear the risk of uncertainty which his own wrong has created and which prevents the precise computation of damages, the fact-finder still may not render a verdict based on speculation or guesswork. Yet, the fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable and inferential, as well as upon direct and positive, proof. Thus, the law does not demand that the estimation of damages be completely free of all elements of speculation.
>
> …
>
> Generally, under Pennsylvania law, damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences. Although the law does not command mathematical precision from evidence in finding damages, sufficient facts must be introduced so that the court can arrive at an intelligent estimate without conjecture. Where the amount of

damage can be fairly estimated from the evidence, recovery will be sustained even though such amount cannot be determined with entire accuracy. It is only required that the proof afford a reasonable basis from which the fact-finder can calculate the plaintiff's loss.

*Id.*, at 1257-1258 (citations omitted).

Subsequently, in *Penn Electric Supply Co., Inc. v. Billows Electric Supply Co.*, 528 A.2d 643 (Pa. Super. 1987), a panel of this Court rejected the plaintiff's assertion that "the court is required to accept the plaintiffs' valuation of damages where defendant fails to identify and value the goods he converted." *Id.*, at 643. In reaching this determination, the panel stated:

We have not uncovered another jurisdiction that, in conversion actions, places the burden of proof as to damages on the defendant so as to require the court to accept the plaintiff's figure. The cases hold that plaintiff is not relieved of the burden of proving the amount of damages simply because the defendant by his own wrong has precluded a more precise computation of damages. The general rule is that if the defendant wishes to argue for a reduction in damages or to rebut the adequacy of plaintiff's evidence, the burden of such a showing is on the defendant. But failure to meet this burden does not require the court to assess damages at whatever figure the plaintiff has shown, however uncertain.

*Id.*, at 645 (citations and quotation marks omitted). The panel held that "in a conversion action, it is for the trier of fact to consider the evidence of damages from both the plaintiff and the defendant and to measure the value of the damages in the context of [the] plaintiff's burden." *Id.*, at 646.

In *Pikunse*, the appellant-landlords admitted to throwing out the appellee-tenant's personal property after she failed to timely pay her rent and then depositing the property at the side of the road as trash. The tenant filed

a lawsuit against the landlords, and the matter proceeded to a non-jury trial. The court found in favor of the tenant and awarded her damages. On appeal, one of the issues the landlords raised was whether the tenant met her burden of proof at trial regarding the value of her personal property.

Applying **Delahanty** and **Penn Electric**, the **Pikunse** Court opined:

In the instant case, the trial court considered the evidence presented by both [tenant] and [landlords] and found that [the tenant]'s evidence was the more credible. In light of this factual finding, we conclude that the trial court's award of damages was not improper, but rather, was adequately supported by the evidence. The list of items taken, and their worth, as estimated by [the tenant], based on the price she paid for each, afforded the trial court a reasonable basis upon which to calculate [the tenant]'s loss. [The landlords] failed to meet their burden of proof with respect to rebutting [the tenant]'s valuation evidence, and therefore, the trial court was free to accept the figure of $7,139.00 proffered by [the tenant] as the value of her personal possessions.

**Pikunse**, 631 A.2d at 1052.

Turning to the present matter, Witherspoon points to the following circumstances as supporting his claim the trial court abused its discretion in awarding him only $7,500 in damages: (1) he testified that he performs home remodeling and restores antique cars; (2) he presented a list of the items converted; (3) McDowell-Wright did not rebut Witherspoon's testimony that he devoted time and financial resources to restoring antique cars; (4) the court found a witness who testified on his behalf regarding the existence of the tools and materials and the conversions of those items credible; and (5) the court found McDowell-Wright liable of conversion. **See** Appellant's Brief, at 8. Additionally, he contends the court abused its discretion when it refused

to utilize the replacement value of his tools because it believed he only used the tools for a hobby. *See id.* Lastly, Witherspoon asserts that precedent only requires him to "make a reasonable basis to calculate his losses." *Id.*

Witherspoon testified that in December 2015, based on his memory, he created a handwritten, itemized list of tools and equipment that he stored in McDowell-Wright's basement and garage that were never recovered and how much he had paid for them. *See* N.T., 3/28/2019, at 25-28; *see also* Trial Exhibit P-9. He also presented a second handwritten, itemized list of converted property he used solely for his hobbies. *See* N.T., 3/28/2019, at 65; *see also* Trial Exhibit P-10. Witherspoon stated that "[a] lot of the tools" at issue he "brought into the relationship" and some he bought during the relationship with McDowell-Wright. *Id.*, at 74. He indicated many of the products were purchased to support his antique car hobby, crafts, and to just earn extra money. *Id.*[5]

Witherspoon presented Donnell Blackmon as a witness. Blackmon was a neighbor of McDowell-Wright and was familiar with Witherspoon's hobbies. *See id.*, at 97-98. Blackmon testified that on the night that Witherspoon was formally evicted from the home, he observed McDowell-Wright's son and brother removing tools and other items that belonged to Witherspoon from

---

[5] Witherspoon also testified he had a trailer located on McDowell-Wright's property that was broken into but no items were missing from it. *See* N.T., 3/28/2019, at 56-57.

the garage. ***See id.***, at 99-101. He stated this activity continued for three weeks. ***See id.***, at 100-101. His testimony did not include evidence regarding the value of the converted items. ***See id.***, at 96-119.

In her defense, McDowell-Wright denied taking or destroying any of the items at issue and testified that Witherspoon took them himself. ***See*** N.T., 3/29/2019, at 5-6. She did not present any evidence challenging the value of the tools and equipment at issue.

At the conclusion of the testimony, the trial court found the following:

> This property that may have been purchased ten years ago for $500 is maybe worth $20 now in terms of its market value after depreciation. Further, these tools were not made for an income-producing business. They were part of his hobby, so he was not in the business of using these tools.

> So if we start depreciating all this material – he didn't tell when he bought it, where he bought it, how much he paid for it at the time, so the Court has to guess its own depreciation and market value of the property that was converted at the time it was converted.

> …

> I think you[, McDowell-Wright,] and your son -- I think you and your son -- I think you were not telling me the truth. I think that your son did go to the garage and remove Mr. Witherspoon's stuff from the garage and probably from the basement too. I think that you weren't telling me the truth about this material.

> Your son didn't like Mr. Witherspoon and didn't like what he did to you, and under those circumstances, it's credible.

> And nobody is here to testify on your behalf either, except for Mr. Blackmon, who testified on behalf of Mr. Witherspoon, which leads to the Court to believe that whatever was in the garage was taken by your son with your consent.

*Id.*, at 47-49.

Additionally, in its Rule 1925(a) opinion, the trial court concisely explained its determination regarding the value of the lost property as follows:

> The Court sitting without [a] jury is, as the finder of fact, entitled to believe all, some, or none of the evidence presented to it regardless of whether [Wright] rebutted [Witherspoon]'s claim of damages. [Witherspoon] could not substantiate his claim for $223,510.00 in lost property beyond his assertion and this claim strained credulity. The record supports the finding of the Court.

Trial Court Opinion, 10/9/2019, at 3.

Based on the case law, we are compelled to agree with the trial court's conclusion. The court heard testimony on the value of the property from a single witness, Witherspoon. He testified that his estimation was based on his memory from December 2015, when he created a handwritten, itemized list after the tools and equipment that he stored in McDowell-Wright's basement and garage had disappeared. *See* N.T., 3/28/2019, at 25-28; *see also* Trial Exhibit P-9. He also indicated that many of the tools were purchased prior to his relationship with McDowell-Wright, and others were purchased during the time period. *Id.*, at 74.

In assessing this testimony, it is evident that the court believed Witherspoon's estimate was overstated, insofar as Witherspoon did not consider depreciation of value when determining the market value of the converted property at the time and place of conversion in 2015. As the court pointed out, Witherspoon did not state when he bought the tools, where he bought them, and how much he paid for them at the time.

Applying **Delahanty** and **Penn Electric** to the present matter, making such an estimate was within the power of the trial court as fact-finder, and while McDowell-Wright did not rebut Witherspoon's proffer of evidence, the court was not required to plainly accept Witherspoon's valuation of damages.

The court's denigration of the value of some the tools because Witherspoon only used them for hobby purposes, taken in isolation, could be seen as an abuse of discretion. Materials used in a hobby are still valuable, and hobbies themselves clearly provide some value to their practitioners. If the court had explicitly depreciated the value of the tools simply because Witherspoon used them for a hobby, we might be inclined to find an abuse of discretion.

However, when reviewing the totality of the court's estimation of the tools' value, we conclude that it did not engage in the reductive analysis Witherspoon alleges. While the court, while speaking from the bench, certainly classified some of the tools as used solely for a hobby, this statement was in a context of describing the deficiencies in Witherspoon's evidence of the value of the tools. The court highlighted several deficiencies and noted that the tools were not used for income-producing purposes.

We find no indication the court depreciated the value of the tools simply because they were used for a hobby. Rather, the court used that factor as one of many for its decision to find Witherspoon's valuation not entirely credible. Since this discussion was, in essence, part and parcel of a credibility

determination, we cannot conclude that it was an abuse of discretion. Accordingly, we conclude that the trial court did not abuse its discretion in setting damages at $7,500, and Witherspoon's argument is unavailing.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/20