J-A19032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARIA SHERWOOD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY FARBER  AND CATHERINE | : | |
| HALPER | : | |
| | : | No. 20 EDA 2021 |
| Appellants | : | |

Appeal from the Order Entered November 13, 2020
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2018-03780

BEFORE:   DUBOW, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED OCTOBER 29, 2021**

Jeffrey Farber and Catherine Halper (collectively, "Appellants") appeal
from the judgment entered following a bench trial in a landlord-tenant action
brought against them by their former tenant, Appellee Maria Sherwood.  For
the reasons set forth below, we affirm the judgment in part, vacate in part,
and remand for further proceedings.

The following factual background is derived from the trial court's findings
of fact.[1]   Sherwood is a disabled combat veteran who suffers from Post-
Traumatic Stress Disorder ("PTSD").  Trial Court Opinion, 6/22/20, Findings
of Fact ("F.F.") ¶¶1, 8-9.  Appellants are a married couple who co-own a rental

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellants concede that the trial court's findings of fact are supported by the
record.  **See** Appellants' Brief at 5.

property at 1089 Durham Road, Pineville, Pennsylvania ("Property"). *Id.*, F.F. ¶¶2-4. On July 15, 2015, Sherwood rented an apartment at the Property from Appellants on a one-year term that renewed annually. *Id.*, F.F. ¶¶5-6. Sherwood continued living in the apartment beyond the first lease term and the lease renewed in July 2016 and again in July 2017. *Id.*, F.F. ¶7.

In November 2017, Sherwood announced to Farber that she was traveling to Arizona to receive treatment following a recurrence of her PTSD symptoms. *Id.*, F.F. ¶10. At that time, Farber informed Sherwood that her behavior had been disturbing other tenants, that he was going to obtain a restraining order against her, and that she needed to find a new place to live. *Id.*, F.F. ¶¶11-12.

While Sherwood was in Arizona, her friend, Louren Campoverde, regularly checked on the apartment and picked up Sherwood's mail. *Id.*, F.F. ¶13. Sherwood remained in Arizona for several months longer than expected after her wallet was stolen and she went through the process to obtain a new identification card and other documents. *Id.*, F.F. ¶16. However, she continued to pay her rent of $1,150 per month during her entire stay in Arizona. *Id.*, F.F. ¶¶17, 41.

In April 2018, during one of her periodic visits, Campoverde discovered that someone else was living in Sherwood's apartment. *Id.*, F.F. ¶18. Campoverde did not see a posted eviction notice during any of her visits; in fact, Appellants never served Sherwood with a summons to appear for an eviction proceeding, a notice to quit, or a notice of a determination of

abandonment. *Id.*, F.F. ¶¶19, 20. Furthermore, in spite of the fact that Farber had Sherwood's cellular telephone number and he had in fact called her in January 2018 to request that she move her vehicles left on the property, Farber never attempted to contact Sherwood by telephone to inform her that she was being evicted. *Id.*, F.F. ¶¶14-15, 24. Instead, Appellants re-rented the apartment without any notice to Sherwood. *Id.*, F.F. ¶20.

Upon receiving the news that someone else was living in her apartment, Sherwood returned to Pennsylvania in April 2018 and discovered that her belongings had been removed from the apartment and placed in a portable metal storage container, referred to as a Pod, that was situated in the Property's parking lot. *Id.*, F.F. ¶¶21-22 & p.6 n.22. Sherwood attempted to contact Farber but received no reply. *Id.*, F.F. ¶26. Sherwood also discovered that the keys to her truck were locked with her other belongings in the Pod, which necessitated her having the truck towed from the Property and having a new key made. *Id.*, F.F. ¶¶25, 38.

Sherwood enlisted the assistance of the Housing Equality Center of Pennsylvania, which contacted Appellants and demanded that Sherwood be provided immediate access to her personal property; Farber refused, stating that Sherwood would not be allowed access to her belongings unless she paid for the costs of storage and hired professional movers. *Id.*, F.F. ¶¶28-30. Sherwood also discovered that Appellants had used her security deposit and rent payments during her time in Arizona to pay for the apartment clean-out and Pod rental fees. *Id.*, F.F. ¶23. When Sherwood returned to the Property

in June 2018 to attempt to access her belongings, Farber handed her a number of notices that he claimed to have posted before the eviction and threatened that he would call the police if she returned to the Property. *Id.*, F.F. ¶¶32-33.

On June 29, 2018, Sherwood filed in the trial court a complaint and motion for injunctive relief seeking immediate access to her belongings. After a hearing in the trial court, Sherwood was able to recover her possessions in July 2018. *Id.*, F.F. ¶35. Sherwood amended her complaint three times, and the operative complaint filed on September 25, 2018 asserted claims against Appellants for wrongful eviction, conversion, trespass to chattels, trespass, intentional infliction of emotional distress, breach of contract, violations of Section 505.1 and 512 of the Landlord and Tenant Act of 1951 ("LTA"),[2] and a violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[3]

A one-day non-jury trial was held on December 11, 2019. On June 22, 2020, the trial court issued its verdict in favor of Sherwood on her claims of breach of contract and violations of the LTA, while dismissing her claims of conversion, trespass to chattels, trespass, violation of the UTPCPL, and intentional infliction of emotional distress. Order, 6/22/20; Trial Court Opinion, 6/22/20, Conclusions of Law ("C.L.") ¶¶ 1-9. The trial court

---

[2] 68 P.S. §§ 250.505a, 250.512.

[3] 73 P.S. §§ 201-1 to 201-10.

- 4 -

concluded that Appellants wrongfully evicted Sherwood by re-renting her apartment despite the fact that she was continually paying them rent; improperly moved Sherwood's belongings to the storage Pod without providing her notice; and improperly used Sherwood's security deposit to cover the costs of the apartment clean out and storage.  Trial Court Opinion, 6/22/20, C.L. ¶¶ 7-9.

The trial court awarded Sherwood damages in the amount of $59,666.64 consisting of:  (i) $1,150 for her security deposit; (ii) $1,874.83 for hotel fees from April 25, 2018 to June 6, 2018; (iii) $859.67 for the tow and key replacement for her truck; (iv) $6,098.82 for storage fees from July 2018 to September 2019; (v) $4,600 for rent paid from January 2018 to April 2018; (vi) $1,500 statutory damages for misuse of security deposit under Section 512 of the LTA; and (vii) $43,583.32 statutory treble damages for removal of possessions without permission under Section 505.1 of the LTA.  **Id.**, F.F. ¶¶37-41, C.L. ¶¶10, 13, 15.  In addition, the trial court ordered Appellants to pay attorneys' fees and court costs in the amount of $92,750 pursuant to Section 505.1 of the LTA.  **Id.**, C.L. ¶17.

Both Appellants and Sherwood filed post-trial motions.  On November 6, 2020, the trial court issued an order granting Sherwood's post-trial motion in part, directing judgment in her favor on the trespass to chattels, conversion, and UTPCPL claims.  Order, 11/6/20, ¶¶1, 2, 4.  The trial court amended the verdict in Sherwood's favor by awarding her additional damages of $15,000 on the trespass to chattels claim, $1,000 on the conversion claim, and $100

on the UTPCPL claim. *Id.* The court denied Sherwood's post-trial motion in all other respects and denied Appellants' post-trial motion in its entirety. *Id.*, ¶¶3, 5. Therefore, the total verdict in Sherwood's favor after post-trial motions was $168,516.64, consisting of $75,766.64 in damages and $92,750 in fees and costs. Judgment was entered on November 13, 2020, and Appellants filed a timely notice of appeal.[4]

Appellants raise the following issues on appeal:

[1.] Whether the trial court committed a manifest abuse of discretion and/or a clear error of law in awarding [Sherwood] any storage fees beyond July 15, 2018.

[2.] Whether the trial court's award of treble damages of $43,583.32 pursuant to 68 P.S. § 250.505a(i) constituted a manifest abuse of discretion and/or a clear error of law.

[3.] Whether the trial court's awards of damages on [Sherwood's] claims of conversion and trespass to chattels constituted manifest abuses of discretion and/or [] clear errors of law.

[4.] Whether the trial court's award of attorneys' fees and court [costs] in the amount of $92,750.00 constituted a manifest abuse of discretion and/or a clear error of law.

Appellant's Brief at 3 (trial court disposition and unnecessary capitalization omitted).

Our review of an order denying a post-trial motion is limited to determining whether the trial court abused its discretion or committed an error of law. *Spencer v. Johnson*, 249 A.3d 529, 549 (Pa. Super. 2021). "An

---

[4] Appellants filed their concise statement of errors pursuant to Pa.R.A.P. 1925(b) on January 27, 2021, and the trial court issued a Pa.R.A.P. 1925(a) opinion on February 19, 2021.

abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Id.* (citation omitted). Where the appellant raises an issue as to an error of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

Appellants' first three appellate issues concern the trial court's award of damages to Sherwood.

> Our standard of review of a trial court's award of damages is narrow: In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence. If the verdict bears a reasonable resemblance to the damages proven, we will not upset it merely because we might have awarded different damages.

*Witherspoon v. McDowell-Wright*, 241 A.3d 1182, 1187 (Pa. Super. 2020) (citation omitted).

Appellants first challenge the $6,098.82 damages award for storage fees from the date Sherwood was able to collect her possessions from the storage Pod in July 2018 until September 2019. Appellants argue that the trial court abused its discretion and committed an error of law by awarding Sherwood damages to store her property for the period beyond July 15, 2018, when her lease expired.

"[I]t is settled in this state that any wrongful act of the landlord which results in an interference of the tenant's possession, in whole or in part, is an eviction for which the landlord is liable in damages to the tenant." *Kohl v.*

*PNC Bank National Association*, 912 A.2d 237, 248–49 (Pa. 2006) (citation omitted)); *see also Kuriger v. Cramer*, 498 A.2d 1331, 1338 (Pa. Super. 1985); *Pollock v. Morelli*, 369 A.2d 458, 460 (Pa. Super. 1976). "The general rule [is] that the lessee may recover . . . for all losses which he can prove he has actually sustained, or which he will necessarily sustain, under the circumstances, as a result of the unlawful eviction." *Pollock*, 369 A.2d at 462 (citation omitted).

The trial court explained that its award of damages for storage fees through September 2019 was based on the fact that Appellants' wrongful actions in evicting her from her apartment and placing her items in storage led to her being unable to find a new dwelling adequate to store all of her belongings. Trial Court Opinion, 2/19/21, at 14-15. The trial reasoned that compensating her "for the small period of time in between her wrongful eviction and the date of her lease expiration would be only a partial compensation of her financial injuries." *Id.* at 15.

We conclude that the trial court did not abuse its discretion in awarding Sherwood damages for storage fees beyond the expiration of her lease term at Appellants' Property. Sherwood testified that, upon her return to Pennsylvania in April 2018, she had to quickly find somewhere to stay and she did not have access to her possessions at the time to furnish her new accommodations; as a result, she rented a single, furnished room in an acquaintance's house in June 2018. N.T., 12/11/19, at 34, 54, 62-63. This left her with nowhere to move her possessions when she finally gained access

to them in July 2018 and she was forced to place her items in a rented storage unit. *Id.* at 63. Therefore, the trial court reasonably concluded that the storage fees Sherwood was required to pay from July 2018 to September 2019 were sustained "as a result of the unlawful eviction" and the withholding of her possessions. *Pollock*, 369 A.2d at 462 (citation omitted).

Appellants next argue that the trial court erred and abused its discretion in requiring them to pay $43,583.32 in statutory treble damages under Section 505.1 of the LTA. This statute provides in relevant part as follows:

> (f) Under no circumstances may a landlord dispose of or otherwise exercise control over personal property remaining upon inhabited premises without the express permission of the tenant. If the conditions under which personal property may be deemed abandoned no longer exist, the landlord shall have no right to dispose of or otherwise exercise control over the property.
>
> . . .
>
> (i) A landlord that violates the provisions of this section shall be subject to treble damages, reasonable attorney fees and court costs.

68 P.S. § 250.505a(f), (i).

Appellants argue that Sherwood did not submit any evidence regarding damage to her belongings as a result of their removal from her apartment and placement into the storage Pod. Appellants contend that all of the damages as to which evidence was submitted related to Sherwood's wrongful eviction, rather than the treatment of her personal property. Therefore, Appellants assert that there were no damages to treble and no award should have been made pursuant to Section 505.1.

Upon review, we agree with Appellants that the trial court's award of treble damages was in error. Initially, we observe that the trial court offered no explanation for how it arrived at the $43,583.32 treble damages figure or which other damages were included in this award. To the best that this Court can discern, the trial court calculated treble damages by tripling five other categories of damages awarded to Sherwood for her security deposit, hotel fees, the tow and key replacement for her truck, storage fees, and four months of rent, which total $14,583.82.[5]

However, we fail to discern how some of the damages included in the treble damages award relate to the subject matter of Section 505.1, relating to a landlord's "dispos[al] of or [] exercise [of] control over" a tenant's property. 68 P.S. § 250.505a(f). In particular, we note that the trial court included in the treble damages award $1,150 of actual damages based upon Appellants' failure to return Sherwood's security deposit and $4,600 of damages for four months of rent that Sherwood paid while she was in Arizona but was evicted from her apartment. While these damages certainly were recoverable based upon Appellants' wrongful eviction of Sherwood and their breach of the lease, we cannot agree with the trial court that these damages

_____

[5] Nevertheless, it appears that the treble damage award is the result of a mathematical error. The damages for the security deposit ($1,150), hotel fees ($1,874.83), tow and key replacement ($859.67), storage fees ($6,098.82), and rent ($4,600) total $14,**583.82**. It appears that the trial court intended to multiply this figure by three, which would have given a product of $43,**749.96**, but instead the court transposed several digits from the actual damages award and arrived at $43,**583.82** instead.

related to Appellants' unauthorized removal of Sherwood's property from her apartment and the placement of those items into storage.

Furthermore, the manner in which the trial court calculated treble damages resulted in, effectively, a quadruple damages award. In **Richards v. Ameriprise Financial, Inc.**, 217 A.3d 854 (Pa. Super. 2019), this Court addressed a similar award in the context of the treble damages provision of the UTPCPL. In that case, the trial court "ascertained the actual damages of $34,006.44 under the UTPCPL," multiplied the actual damages by three resulting in $102,019.32, then awarded treble damages of $102,019.32 **in addition to** the actual damage award of $34,006.44 **Id.** at 866. Noting that the UTPCPL "does not authorize [] the award of quadruple damages," we concluded that a treble damages award is properly calculated by determining the amount of actual damages sustained under the UTPCPL and multiplying that figure by three. **Id.** at 865-66. As the method of calculation employed by the trial court in **Richards** resulted in the extra award of $34,006.44 to the plaintiff, we struck this amount from the damages award. **Id.** at 866.

Here, the trial court awarded actual damages of $14,583.82 for Appellant's security deposit, hotel fees, the tow and key replacement, storage fees, and four months of rent. The trial court then multiplied the actual damages by three and included this sum in the damage award in addition to the $14,583.82 of actual damages, resulting in what was effectively a quadrupling of the actual damages. However, Section 505.1 of the LTA, like the UTPCPL, only authorizes the imposition of treble damages, not quadruple

damages. 68 P.S. § 250.505a(i); *cf. Richards*, 217 A.3d at 865.[6] Therefore, the treble damage award here cannot stand.

Accordingly, we vacate the treble damages award and remand for a recalculation of these damages. In determining the proper treble damages award on remand, we direct the trial court to only include those damages that relate to Appellants' improper "dispos[al] of or [] exercise [of] control over" Sherwood's property. 68 P.S. § 250.505a(f).

Appellants next challenge the trial court's award of damages to Sherwood of $15,000 on her trespass to chattels claim and $1,000 on her conversion claim. Noting that "the measure of damages for conversion is the market value of the converted property at the time and place of conversion," *L.B. Foster Co. v. Charles Caracciolo Steel and Metal Yard, Inc.*, 777 A.2d 1090, 1096 (Pa. Super. 2001), Appellants argue that the record was completely devoid of any evidence either as to the market value of any of the possessions in her apartment or of the value of any impairment to her possessions as a result of their temporary placement in the storage Pod.

"Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Witherspoon*, 241 A.3d at 1187 (citation omitted). Trespass

---

[6] We note that Section 505.1 was amended in 2014 with the treble damages provision added at that time. *See* Act of October 22, 2014, P.L. 2620, No. 167. While no case law exists interpreting the treble damages provision of Section 505.1, we see no basis upon which to interpret it any differently than other treble damages provisions set forth in Pennsylvania law.

to chattels is a similar tort committed when an individual "dispossess[es] another of chattel . . . or us[es] or intermeddl[es] with a chattel in the possession of another." ***Pestco, Inc. v. Associated Products, Inc.***, 880 A.2d 700, 708 (Pa. Super. 2005) (citing Restatement (Second) of Torts § 217); ***see also Rosemont Taxicab Co., Inc. v. Philadelphia Parking Authority***, 327 F.Supp.3d 803, 828 (E.D. Pa. 2018) (noting that in Pennsylvania, the elements of trespass to chattel "are essentially the same" as those of the tort of conversion) (citation omitted).

While this Court applies a deferential review of damage awards, we have recognized that a more rigorous standard is due as to a trial court's valuation of damaged personal property. ***See Witherspoon***, 241 A.3d at 1187. Damages for conversion and trespass to chattels may be based on the market value of property that is permanently converted, the diminution in market value as a result of a temporary conversion or trespass, or damages associated with the loss of use of personal property. ***Witherspoon***, 241 A.3d at 1187; Restatement (Second) of Torts § 927, Comment O; ***id.*** § 928; ***see also Kintner v. Claverack Rural Electric Co-op., Inc.***, 478 A.2d 858, 861-62 (Pa. Super. 1984). In addition, a plaintiff who is tortiously deprived of property may recover the special value of the property to her if greater than the market value of the property. ***Witherspoon***, 241 A.3d at 1187; Restatement (Second) of Torts § 927, Comment C.

Estimates of market value are permitted in determining the damage award, however the verdict may not be "based on speculation or guesswork."

- 13 -

***Witherspoon***, 241 A.3d at 1187-88 (citation omitted). Thus, while "mathematical certainty" is not required, the damages as to personal property must be proved "with reasonable certainty" based upon "sufficient facts [that allow] the court [to] arrive at an intelligent estimate without conjecture." ***Id.*** at 1188 (citation omitted); ***see also Croft v. Malli***, 105 A.2d 372, 375 (Pa. 1954) (holding that damages for loss of use or impairment of property is permitted so long as the plaintiff demonstrated actual loss "with a reasonable degree of certainty through witnesses with knowledge of the facts") (citation omitted). Moreover, although the fact-finder may estimate the damages and rely on "probable and inferential," as well as "direct and positive," proof of damages, the plaintiff retains the primary burden of proving the amount of damages. ***Witherspoon***, 241 A.3d at 1188 (citation omitted); ***see also Penn Electric Supply Co., Inc. v. Billows Electric Supply Co., Inc.***, 528 A.2d 643, 645 (Pa. Super. 1987).

In its Rule 1925(a) opinion, the trial court stated that it based its $1,000 conversion damages award on Sherwood's testimony regarding the items that were removed from her apartment, including plants that had sentimental value that she had cared for over many years. Trial Court Opinion, 2/19/21, at 12. The trial court explained that, while Sherwood did not provide exact values for the property, the $1,000 award was fair compensation for her injury. ***Id.*** at 12-13. With respect to the $15,000 trespass to chattels award, the court explained that it was "forced to estimate the reasonable cost of the [Sherwood's] items and the harm [Appellants] caused when withholding them

for three months." ***Id.*** at 13. The trial court based its calculation on Sherwood's monthly rent payments under the lease of $13,800 and her storage fees for her property over a 14-month period of $6,098.82. ***Id.*** The court "ascertained" that the harm caused to her property should be "slightly above her year's rent payment[; p]resumably, had her property been worth more, [Sherwood] would have tendered more expensive accommodations." ***Id.***

With respect to the conversion award, we find that the trial court acted within its discretion in calculating damages at $1,000. Sherwood explained at trial that several plants in her apartment—including a bonsai tree that she had cared for over eight years and an African violet plant handed down from her grandmother—were destroyed when placed into the storage Pod. N.T., 12/11/19, at 56-57. Sherwood stated that she "cherished" the bonsai and African violet plant and that the violet was a "sentimental belonging[]" and "the only living thing that [she had] in remembrance of her" grandmother. ***Id.*** at 57. While Sherwood did not provide the trial court with exact monetary values for the bonsai and violet, Sherwood established that the plants had a special value to her beyond the cost to replace these items, and the trial court was permitted to arrive at a "just and reasonable estimate" calculation of the damages based upon this special value. ***Witherspoon***, 241 A.3d at 1188 (citation omitted); ***see also Lynch v. Bridges & Co. Inc.***, 678 A.2d 414, 416 (Pa. Super. 1996) ("[I]t is the traditional function of the fact finder in conversion actions to estimate damages.") (citation omitted); ***Pikunse v.***

***Kopchinski***, 631 A.2d 1049, 1050-52 (Pa. Super. 1993) (affirming conversion damages award to tenant for personal property improperly disposed of by landlord where some of the converted possessions had only sentimental value to the tenant as to which no market value could be affixed).

However, we must conclude that the trial court abused its discretion in awarding Sherwood $15,000 on her trespass to chattels cause of action. Aside from Sherwood's inability to access the keys to her truck leading to the tow and key replacement—as to which she was independently compensated by the trial court—Sherwood did not present any evidence of damages resulting from her temporary loss of use of her personal property or any diminution of market value of these items owing to Appellants' actions. The trial court thus was required to engage in "speculation and guesswork" in calculating what the value of these items **would** have meant to her during the period of dispossession, ***Witherspoon***, 241 A.3d at 1187 (citation omitted), and such guesswork cannot make up for the absence of any record upon which the award could have been based to a degree of "reasonable certainty." ***Id.*** at 1188 (citation omitted). Accordingly, we affirm the award of $1,000 of damages to Sherwood for conversion of her personal property but vacate the trial court's $15,000 trespass to chattels award.

Finally, Appellants challenge the trial court's award of attorneys' fees and costs to Sherwood in the amount of $92,750. Appellants argue that the award was excessive as the trial court did not make any effort to apportion the fees and costs as they related to the litigation of her claim under Section

505.1 of the LTA, the only one among her nine claims for which fees and costs were awarded.

Where an award of attorneys' fees is authorized by statute, we review the amount awarded under an abuse of discretion standard. *Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011). The trial court is afforded great latitude in fashioning its award, and we will not disturb it merely because we might have reached a different conclusion. *Id.*; *Pelissero v. Seraly*, 247 A.3d 433, 437 (Pa. Super. 2021). "Rather, we require a showing of manifest unreasonableness, partiality, prejudice, bias, ill-will, or such lack of support in the law or record for the award to be clearly erroneous." *Samuel-Bassett*, 34 A.3d at 51.

This Court has held that where a statute authorizes the recovery of attorneys' fees on one cause of action among several claims raised in the litigation, the trial court must undertake efforts to limit the fee award to the claims brought under the authorizing statute. *See Krishnan v. The Cutler Group, Inc.*, 171 A.3d 856, 871 (Pa. Super. 2017); *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1031-32 (Pa. Super. 2005); *Croft v. P & W Foreign Car Service, Inc.*, 557 A.2d 18, 20 (Pa. Super. 1989). Thus, in awarding the fees, the trial court "must link the attorney fee award to the amount of damages sustained under [the statutory claim] and eliminate from the award of attorney fees the efforts to recover on" the claims as to which there exists no statutory authority for recovery of fees. *Neal*, 882 A.2d at 1031-32; *see also Krishnan*, 171 A.3d at 871. Nevertheless, we have

recognized that it is often difficult to parse out the time spent on a claim as to which recovery of fees and costs is authorized from other claims with "a common core of facts and related legal theories." *P & W Foreign Car Service*, 557 A.2d at 20; *see also Boehm v. Riversource Life Insurance Co.*, 117 A.3d 308, 335 (Pa. Super. 2015).

In its Rule 1925(a) opinion, the trial court opined that the hours spent by a plaintiff in litigating an "unsuccessful claim should be excluded in considering the amount of a reasonable fee" only where the unsuccessful claim is "distinct in all respects from his successful claims." Trial Court Opinion, 2/19/21, at 15 (quoting *Township of South Whitehall v. Karoly*, 891 A.2d 780, 786 (Pa. Cmwlth. 2006)). In addition, the court reasoned that "[o]nly where the plaintiff has 'limited success' in her claim should the trial court reduce her attorney fee award to be proportional to her legal victory." *Id.* at 16 (quoting *Karoly*, 891 A.2d at 786). The trial court concluded that each of the claims Sherwood brought, including the Section 505.1 claim, "stemmed from the wrongful eviction" and she therefore "should not be punished [through a reduction of the award of fees and costs] for bringing appurtenant claims against her former landlords." *Id.*

Here, while we agree with the trial court that the nine claims brought by Sherwood all involve "a common core of facts and related legal theories," *Croft*, 557 A.2d at 20, we cannot concur in the trial court's judgment that Sherwood was entitled to the entirety of her attorneys' fees and court costs without any reduction related to the litigation of her non-Section 505.1 claims.

For example, we note that Sherwood amended her complaint three times, and it is unclear to what extent her pleadings pertaining to the dispossession of her property changed with each respective version of the complaint. Furthermore, Sherwood filed three motions *in limine*, at least two of which relate to evidence concerning events prior to her departure for Arizona, long before Appellants improperly removed her personal property from her apartment and placed them in the storage Pod. Additionally, Sherwood filed a motion for summary judgment, seeking relief on six claims, only one of which was her Section 505.1 claim. Finally, we observe that, while the Section 505.1 claim substantially overlapped with the other claims asserted in the complaint, the evidence adduced at trial to show a violation and damages on certain of her claims, most notably her intentional infliction of emotional distress claim, differed markedly from that put forward to prove a violation of Section 505.1.[7]

Accordingly, we conclude that the trial court abused its discretion in not undertaking any effort to separate the attorneys' fees and court costs related to the litigation of the Section 505.1 claim from those associated with the

---

[7] We also note, while the trial court relied on the Commonwealth Court opinion in **Karoly** in support of its conclusion that a reduction of the award of attorneys' fees and court costs is not required unless the unrelated claims are entirely distinct from the claim for which recovery is authorized, **Karoly** is not binding on this Court and indeed inconsistent with our well-established caselaw regarding the recovery of attorneys' fees in litigation involving mixed claims. **See Murphy v. Karnek**, 160 A.3d 850, 860 n.11 (Pa. Super. 2017) (stating that Superior Court is not bound by Commonwealth Court decisions).

litigation of her other claims. However, we additionally note that, while the trial court based its award of fees and costs solely on the Section 505.1 claim, the UTPCPL also permits recovery of fees and costs on a successful claim under that statute. **See** 73 P.S. § 201-9.2(a). The trial court here did find that Appellants violated the UTPCPL but only in its November 6, 2020 ruling on post-trial motions after initially dismissing this claim in its June 22, 2020 verdict, the same ruling where the court made its award of fees and costs under Section 505.1. Because the trial court did not have the opportunity to base its award of fees and costs on the UTPCPL, we conclude that it may do so on remand.[8] We therefore vacate the $92,750 award and remand this matter for the trial court to determine the proper amount of attorneys' fees and court costs related to the litigation of the Section 505.1 and UTPCPL claims.[9]

_____

[8] This Court has held that, in the context of an award under the UTPCPL, there must be "a sense of proportionality between an award of damages [under the UTPCPL] and an award of attorney's fees." **Richards**, 217 A.3d at 868 (citation omitted); **see also Boehm**, 117 A.3d at 335. In its Rule 1925(a) opinion, the trial court found that Appellants waived any challenge to the proportionality of the award of fees and costs by not raising the argument in their post-trial motions. Trial Court Opinion, 2/19/21, at 16 n.65. We agree with the trial court that Appellants failed to preserve an objection to the proportionality of the award insofar as the award was based on the fees and costs associated with the litigation of the Section 505.1 claim.

[9] Appellants raise two other challenges to the award of fees and costs that do not warrant relief. First, Appellants argue that Sherwood did not present any "testimony or documentary evidence [] regarding the attorney's fees incurred in terms of time, details, hours, reasonableness or necessity." Appellants' Brief at 11. However, Appellants waived this argument by failing to raise it in

*(Footnote Continued Next Page)*

Judgment vacated in part and affirmed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2021

---

their post-trial motion or their Rule 1925(b) statement of matters complained of on appeal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(4)(vii) (issues not included in Rule 1925(b) statement are waived).

Appellants further contend that the dispute related to Sherwood's personal property—which was the subject of the Section 505.1 claim—was rendered moot when the property was returned to her in July 2018 and any attorneys' fees and costs from after the date of return could not be assessed against Appellants. We disagree that Sherwood's Section 505.1 claim was mooted by the return of her property as that statute clearly provides that a tenant may recover damages arising out of a landlord's violation of the statute. **See** 68 P.S. § 250-505a(i). Appellants have cited to no authority, and we are aware of none, that would restrict the recovery of attorneys' fees and court costs solely to the fees and costs incurred during the period when the defendant is actively violating the statute that authorizes recovery.